■ ALLAN SALMAN et al., Plaintiffs, and ZORAZELLA GARCIA, Appellant, v HECTOR ROSARIO et al., Defendants, and BASSOUGH KANATE, Respondent. [928 NYS2d 531]—

As an initial matter, while plaintiff's doctors' conclusions were arguably based on medical information previously available and she could arguably have included this information in her original motion, a court has latitude, in the interest of justice, to grant renewal, even on facts known to the movant at the time of the original motion (*see Rancho Santa Fe Assn. v Dolan-King*, 36 AD3d 460 [2007]). Here, plaintiff's lawyer avers that she was unable to locate the records from Crotona Heights Medical, the initial treating facility after her emergency room visit, in time to submit those papers in opposition to defendant's summary judgment motion because that medical office had closed. The law firm was only able to locate the records in conjunction with another case.

On November 28, 2005, the then 21-year-old plaintiff was a passenger in a motor vehicle that defendant rear-ended with his vehicle. Shortly after the accident, an EMT removed plaintiff from the vehicle. At that time, plaintiff complained to the EMT that she had a "burning sensation going up her spine, [a] head-

ache from her head hitting the car and [her] knee." Plaintiff testified that she had never hurt those body parts in any other accidents before or after the accident.

After the accident, plaintiff was taken by ambulance to the emergency room at Metropolitan Hospital where she made the same physical complaints. The hospital took X rays, but found nothing broken. Plaintiff believed she was then given a prescription for Motrin and was driven home.

Plaintiff testified that she missed three days of work after the accident and then returned to work. However, she had to quit work approximately three weeks before having knee surgery on March 30, 2006 because her knee was "extremely swollen." Plaintiff stated that, beginning approximately one week after the accident, she received physical therapy for approximately two months. Following her surgery in March 2006, plaintiff resumed physical therapy for approximately one month. In her affidavit in opposition, plaintiff explained her gap in treatment. She stated that once her no-fault benefits stopped, she could not afford to pay for medical care (see Mendez v Mendez, 72 AD3d 402 [2010] ["(p)laintiff's experts also explained any gap in her treatment by stating that she had reached the maximum benefit possible from the treatment"]). Plaintiff also testified that, as a result of the accident, she cannot stand for long periods, has difficulty walking and running, cannot lift heavy objects, has trouble sleeping and is sensitive to light.

Dr. Andrew Cordaro, who examined plaintiff just one month after the accident, noted that plaintiff complained about her right knee. He referred her for X rays and an evaluation with an orthopedic surgeon.* The MRI report from Dr. Andrew Caruthers, dated March 13, 2006, describes a "longitudinal tear of the lateral meniscus contacting superior surface" and "small knee joint effusion."

Most important, plaintiff's orthopedic surgeon, Dr. Ehrlich, who performed arthroscopic surgery on plaintiff's knee only four months after the accident, opined that "to a reasonable degree of medical certainty, the motor vehicle accident of 11/28/05 is the proximate cause of her condition, and not from a pre-existing or long standing degenerative process." Plaintiff's surgeon based this conclusion on his observations of plaintiff's knee during surgery (documented in the operative report

---

* Although the records from Dr. Cordaro's office are unsworn, it is of no moment. The documents are properly certified as business records (see Mayblum v Schwarzbaum, 253 AD2d 380 [1998]; CPLR 4518 [a]), and are referenced only to show plaintiff's complaints and the doctor's referral rather than a medical opinion about a causal relation to the accident.

plaintiff submitted on the original motion) and because plaintiff's MRI films (plaintiff submitted the MRI report on the original motion) did not depict the existence of osteophytes, show evidence of spondylosis or show other symptoms of degenerative processes. Thus, plaintiff's surgeon countered defendant's orthopedist's observation that plaintiff's injuries had no traumatic basis. Plaintiff's surgeon also documented range-of-motion limitations in the knee. Dr. Mian, who also conducted an orthopedic examination in 2008 and found deficits in plaintiff's range of motion, opined that the right knee tear was causally related to the accident. Thus, the evidence more than amply raised an issue of fact as to whether plaintiff had sustained a "serious injury" of a permanent nature to the right knee within the meaning of Insurance Law § 5102 (d).

Plaintiff's objective evidence of injury, four months postaccident, was sufficiently contemporaneous to establish that plaintiff had suffered a serious injury within the meaning of the statute. Dr. Ehrlich based his conclusions in large part on his actual observations of plaintiff's knee during the surgery he performed. This conclusion is significant because the doctor was able to see exactly what the injuries were. Moreover, in her affidavit, plaintiff stated that, prior to surgery, she had physical therapy five times a week for three months. It is not unreasonable to try to resolve an injury with physical therapy before resorting to surgery. The circumstances, i.e., plaintiff's initial medical exam that was close in time to the accident, her intensive physical therapy, her young age and eventual surgery, make the four months between the accident and plaintiff's objective medical evidence sufficiently contemporaneous to withstand a motion for summary judgment (see Gonzalez v Vasquez, 301 AD2d 438 [2003] [examining physician's affirmation correlating motorist's neck and back pain two years after rear-end collision to quantified range of motion limitations found on physical examination and bulging and herniated discs described in MRI reports, and opining that motorist's symptoms were permanent, raised genuine issue of material fact as to whether motorist suffered serious injury]; see also Rosario v Universal Truck & Trailer Serv., 7 AD3d 306, 309 [2004]).

. However, defendants did establish, prima facie, that plaintiff did not suffer a 90/180-day injury, and plaintiff failed to raise a triable issue of fact, given her testimony that she was out of work for only three days (see Pou v E&S Wholesale Meats, Inc., 68 AD3d 446, 447 [2009]). Concur—Saxe, J.P., Moskowitz, Richter and Manzanet-Daniels.

Román, J., dissents in a memorandum as follows: To the

extent that the majority concludes that renewal of the motion court's order granting summary judgment in favor of Kanate was warranted, and that upon renewal Garcia's evidence precluded summary judgment, I dissent. Here, renewal would only have been warranted in the interest of justice, and to the extent that Garcia's evidentiary submission on renewal failed to establish any injury contemporaneous with her accident, renewal should have been denied.

To the extent that Garcia submitted medical evidence failing to establish treatment earlier than January 25, 2006, two months after this accident, Garcia failed to raise a triable issue of fact as to whether she sustained a serious injury because she failed to submit competent and admissible medical evidence of injury contemporaneous with her accident (*see Ortega v Maldonado*, 38 AD3d 388 [2007]; *Toulson v Young Han Pae*, 13 AD3d 317, 319 [2004]; *Alicea v Troy Trans, Inc.*, 60 AD3d 521, 522 [2009]; *Migliaccio v Miruku*, 56 AD3d 393, 394 [2008]). Accordingly, the motion court properly granted Kanate's initial motion for summary judgment with respect to all categories of injury under Insurance Law § 5102.

On her motion to renew, seeking to remedy shortcomings in her prior submission, Garcia tendered, inter alia, medical records, not previously submitted, purportedly evincing medical treatment contemporaneous with her accident. Specifically and to the extent relevant here, on renewal Garcia submitted records evincing a medical examination occurring a month after her accident. Nothing submitted competently evinced medical treatment at anytime prior thereto. A motion to renew "must be based upon additional material facts which existed at the time the prior motion was made, but were not then known to the party seeking leave to renew, and, therefore, not made known to the court" (*Foley v Roche*, 68 AD2d 558, 568 [1979]). However, when the proponent of renewal seeks to proffer new evidence of which he/she was previously aware but did not provide to the court on a prior motion, renewal may be granted if the interest of justice so dictates (*Tishman Constr. Corp. of N.Y. v City of New York*, 280 AD2d 374, 376-377 [2001]; *Mejia v Nanni*, 307 AD2d 870, 871 [2003]). Generally, the interest of justice requires renewal when the newly submitted evidence changes the outcome of the prior motion. Here, Garcia sought renewal in order to have the motion court consider evidence previously known to her. Accordingly, renewal would have only been warranted if it served the interest of justice. At best, Garcia's medical evidence of injury on renewal established medical treatment beginning no sooner than a month after her ac-

cident. A medical examination occurring a month after an accident is not contemporaneous. Given its plain and ordinary meaning, contemporaneous means "existing, happening in the same period of time" (Webster's New World Dictionary 300 [3rd college ed 2004]). Accordingly, insofar as Garcia's evidence on renewal did not evince medical treatment contemporaneous with the accident, renewal in the interest of justice should have been denied.

The majority takes the untenable position that not only is Garcia's medical examination, occurring a month after the accident, contemporaneous with her accident, but paradoxically that the report of her surgeon, who did not see plaintiff for the first time until *four* months after her accident, is sufficient to establish the causal link between Garcia's knee injury and her accident such that she raised an issue of fact precluding summary judgment in Kanate's favor. First, if a medical examination occurring one month after an accident is not contemporaneous, then an examination occurring four months after an accident is certainly less so (*Mancini v Lali NY, Inc.*, 77 AD3d 797, 798 [2010] [medical findings made by plaintiff's doctor four months after his accident not sufficiently contemporaneous with the accident to establish a serious injury]; *Resek v Morreale*, 74 AD3d 1043, 1044-1045 [2010] [medical findings made by plaintiff's doctor five months after his accident not sufficiently contemporaneous with the accident to establish a serious injury]). Moreover, even if we assume that this report was temporally contemporaneous with her accident, it was nevertheless bereft of any objective, qualitative, or quantitative evidence of injury to her knee (*Blackmon v Dinstuhl*, 27 AD3d 241, 242 [2006]; *Thompson v Abbasi*, 15 AD3d 95, 98 [2005]). Second, contrary to the majority's assertion, the report of Garcia's orthopedist might have been probative as to her knee injury on the date he performed surgery, but standing alone, his observations on that date could not have been probative as to whether that injury was caused by this accident (*see Pommells v Perez*, 4 AD3d 101, 101-102 [2004], *affd* 4 NY3d 566 [2005] [medical opinion as to causation is speculative when the record is bereft of any evidence establishing contemporaneous medical treatment and the doctor proffering opinion sees plaintiff for the first time after a substantial period of time since the accident]; *Vaughan v Baez*, 305 AD2d 101, 101 [2003]; *Shinn v Catanzaro*, 1 AD3d 195, 198-199 [2003]; *Komar v Showers*, 227 AD2d 135, 136 [1996]).

The majority relies on two cases in support of its holding, *Gonzalez v Vasquez* (301 AD2d 438 [2003]) and *Rosario v Uni-*

*versal Truck & Trailer Serv.* (7 AD3d 306 [2004]), neither of which bears on the issue of contemporaneous medical treatment and both of which, to the extent that they allow a doctor to establish causation upon an initial examination conducted a substantial time after an accident, are at odds with *Vaughan, Shinn, Komar* and *Pommells*.