■ Richard Torres, Respondent, v Jose Villanueva et al., Appellants. [934 NYS2d 392]—

On October 23, 2008, as then 29-year-old plaintiff Richard Torres was crossing the street, a livery cab owned by defendant Sheridan, Inc. and operated by defendant Jose Villanueva struck him in the knees and knocked him to the ground. Despite complaints of knee pain, plaintiff was diagnosed with left distal thigh contusion during his initial medical evaluations at the emergency room of a hospital the morning after the accident, and during his initial October 28, 2008 visit with Dr. Orsuville Cabatu, a specialist in physical and rehabilitation medicine. Pursuant to evaluations by other physicians, he had knee surgery on December 2008.

Defendants met their initial burden of demonstrating absence of significant limitation of use of plaintiff's left knee by submitting a report from radiologist Peter Ross, M.D. showing only degenerative changes in the menisci in an otherwise normal knee, and a December 2009 report from orthopedist Gregory Montalbano, M.D. showing that objective tests revealed full range of motion, that plaintiff sustained a left thigh contusion that had resolved, and that plaintiff's obesity and patellofemoral syndrome contributed to plaintiff's knee condition (see Cabrera v Gilpin, 72 AD3d 552 [2010]).

In response, plaintiff submitted the report of orthopedist Stanley Liebowitz, M.D. showing that plaintiff saw him on October 29, 2008 complaining that daily activities (standing, walking, stair climbing, and his job duties as a bus driver) increased the level of knee discomfort, and a diagnosis of post-traumatic tenosynovitis based on the doctor's observations of mild effusion and tenderness. Pursuant to a radiologist's MRI findings of joint effusion and tears in the lateral collateral ligament and anterior cruciate ligament, Dr. Liebowitz performed knee surgery in December 2008, during which he discovered a "crush injury" of the medial femoral condyle, "extensive

synovitis," and a torn and lax anterior cruciate ligament with positive anterior drawer sign and Lachman testing. A February 2009 report of Dr. Cabatu noted that plaintiff still complained of pain, especially when bending or squatting, and tenderness on palpation. Plaintiff testified at his November 2009 deposition that he still saw Dr. Cabatu for physical therapy, and that he could not pick up his children, climb stairs, bend, run, exercise, or stand for long periods without feeling knee pain. The report of orthopedist Paul Post, M.D., who examined plaintiff in October 2010, noted a 20-degree limitation in flexion of the knee, and tenderness and thickness of the synovium. The evidence of limitations, and injuries set forth in the MRI and operative reports, raise a factual issue as to existence of a significant limitation of use of the knee (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353 [2002]).

The evidence of plaintiff's treatment, which began days after the accident, including Dr. Liebowitz' sufficiently contemporaneous findings during surgery of a crush injury and positive anterior drawer sign and Lachman testing, raises an issue of fact as to causation (*see Salman v Rosario*, 87 AD3d 482 [2011]). Plaintiff adequately addressed defendants' evidence of degenerative and preexisting conditions (*see Perl v Meher*, 18 NY3d 208 [2011]; *Pommells v Perez*, 4 NY3d 566, 580 [2005]). Concur— Tom, J.P., Friedman, Freedman, Richter and Manzanet-Daniels, JJ.