[830 NE2d 278, 797 NYS2d 380]

ANTHONY POMMELLS, Appellant, v FRANCISCO R. PEREZ et al., Respondents.

DAVID G. BROWN, Appellant, v ATHENA D. DUNLAP et al., Respondents.

Argued March 23, 2005; decided April 28, 2005

MIGUEL CARRASCO, Appellant, v AURORA MENDEZ, Respondent.

Decided April 28, 2005

## POINTS OF COUNSEL

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), and *Ripka, Rotter & King, LLP* (*Alan S. Ripka* of counsel) for appellant in the first above-entitled action. Plaintiff adequately raised triable issues of fact regarding whether or not he sustained a serious injury, thereby mandating denial of defendants' summary judgment motions; conflicts in expert testimony based on the same evidence go to the weight of the evidence as did any gap in treatment; plaintiff cannot be faulted for relying on documents also used by defendants' experts; under *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002]) plaintiff's expert's testimony was sufficient to raise a question of fact as to serious injury. (*Kordana v Pomellito,* 121 AD2d 783, 68 NY2d 848; *Countermine v Galka,* 189 AD2d 1043; *Oberly v Bangs Ambulance,* 96 NY2d 295; *Gaddy v Eyler,* 79 NY2d 955; *Scheer v Koubek,* 70 NY2d 678; *Miller v Miller,* 100 AD2d 577, 68 NY2d 871; *Scamacca v Bennett,* 161 AD2d 1197; *Montgomery v Daniels,* 38 NY2d 41; *Licari v Elliott,* 57 NY2d 230; *Matter of Granger v Urda,* 44 NY2d 91.)

*Norman Volk & Associates,* New York City (*Michael I. Josephs* of counsel), for Francisco R. Perez, respondent in the first above-entitled action. I. Plaintiff was not too young to develop a degenerative back condition. II. During the four-year gap, any connection between plaintiff's initial injury and the symptoms found by Dr. Rose was irreversibly severed. (*Franchini v Palmieri,* 307 AD2d 1056; *Kallicharan v Sooknanan,* 282 AD2d 573.) III. It was appropriate for defendants to have plaintiff examined

by a neurologist. (*Zoldas v Louise Cab Corp.*, 108 AD2d 378.) IV. A herniated disc in plaintiff's lumbar spine was not alleged to be part of plaintiff's claims of serious injury. (*Jeng-Jen Chen v Marc*, 10 AD3d 295.) V. There were no acceptable objective tests conducted by Dr. Rose. (*Brown v Achy*, 9 AD3d 30; *Nitti v Clerrico*, 98 NY2d 345; *Grossman v Wright*, 268 AD2d 79; *Waldman v Dong Kook Chang*, 175 AD2d 204.) VI. Appellant has not provided medical support for a serious injury under the 90/180 day category. (*Beaubrun v New York City Tr. Auth.*, 9 AD3d 258; *Dabiere v Yager*, 297 AD2d 831.)

*Galvano & Xanthakis, P.C.*, New York City (*Matthew Kelly* of counsel), for Rohit Latchman, respondent in the first above-entitled action. The Appellate Division, First Department, correctly affirmed the trial court's decision to grant defendants' summary judgment motions to dismiss plaintiff's complaint because there are no issues of fact as to whether plaintiff sustained a "serious injury" within the meaning of Insurance Law § 5102 (d). (*Cosmos Forms v American Computer Forms*, 193 AD2d 577; *Paltrow v Town of Lewisboro*, 199 AD2d 372; *Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338; *Hewett v Marine Midland Bank of Southeastern N.Y.*, 86 AD2d 263; *Licari v Elliott*, 57 NY2d 230; *Pagano v Kingsbury*, 182 AD2d 268; *Dwyer v Tracey*, 105 AD2d 476; *Schaming v Saunders Constr. Carriers*, 172 AD2d 957; *Scheer v Koubek*, 70 NY2d 678.)

*Barry Siskin*, New York City, for appellant in the second above-entitled action. I. Plaintiff can prove a "significant impairment" without sustaining a herniated disc. (*Lopez v Senatore*, 65 NY2d 1017; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345.) II. The statute does not refer to a gap in treatment and that should be a fact-finding issue for the jury to determine. (*Akamnonu v Rodriguez*, 12 AD3d 187; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345; *Cruz v Castanos*, 10 AD3d 277.) III. Plaintiff's doctor's opinion to a reasonable degree of medical certainty, following range of motion tests of the various movements of the cervical and lumbar spines, in degrees, with comparison to the norm that plaintiff sustained a serious injury is all that is required by this Court. (*Villalta v Schechter*, 273 AD2d 299; *Grossman v Wright*, 268 AD2d 79.)

*Rivkin Radler LLP*, Uniondale (*Cheryl F. Korman, Evan H. Krinick* and *Stuart M. Bodoff* of counsel), for Athena D. Dunlap and another, respondents in the second above-entitled action. The Supreme Court and Appellate Division correctly granted

Mr. Saunders' cross motion for summary judgment inasmuch as plaintiff failed to raise an issue of fact as to whether he sustained a serious injury as defined by Insurance Law § 5102 (d). (*Licari v Elliott,* 57 NY2d 230; *Scheer v Koubek,* 70 NY2d 678; *Toure v Avis Rent A Car Sys.,* 98 NY2d 345; *Dufel v Green,* 84 NY2d 795; *Lowe v Bennett,* 122 AD2d 728, 69 NY2d 700; *Gaddy v Eyler,* 79 NY2d 955; *Calcagno v New York City Tr. Auth.,* 273 AD2d 334, 95 NY2d 875; *Lopez v Senatore,* 65 NY2d 1017; *Brown v Dunlap,* 6 AD3d 159; *Franchini v Palmieri,* 1 NY3d 536.)

*Curtis Vasile Devine & McElhenny,* Merrick (*Samantha B. Lansky* of counsel), for Trucklease Corporation and others, respondents in the second above-entitled action. I. The court below properly granted summary judgment as defendants presented sufficient proof in admissible form that appellant did not sustain a serious injury. (*Grossman v Wright,* 268 AD2d 79; *Villalta v Schechter,* 273 AD2d 299.) II. The court below properly granted summary judgment to defendants as appellant's proof was insufficient to raise a triable issue of fact that appellant did not sustain a serious injury. (*Pramnieks v Bush,* 272 AD2d 596; *Toure v Avis Rent A Car Sys.,* 98 NY2d 345; *Grossman v Wright,* 268 AD2d 79; *Dan v Luke,* 237 AD2d 165; *Monaco v Davenport,* 277 AD2d 209; *Goldin v Lee,* 275 AD2d 341; *Shay v Jerkins,* 263 AD2d 475; *Jeng-Jen Chen v Marc,* 10 AD3d 295; *Hernandez v Bahlke,* 6 AD3d 578.)

*Ginsberg & Katsorhis, P.C.,* Flushing (*Nicole D. Katsorhis* of counsel), for appellant in third above-entitled action. It is obvious that the medical affidavit submitted was, in and of itself, sufficient to deny summary judgment as a matter of law without the proffering of any other medical evidence or testimony.

*Epstein, Grammatico, Frankini & Marotta,* Woodbury (*Mona Haas* of counsel), for respondent in the third above-entitled action. It is clear that the Supreme Court and Appellate Division's finding that plaintiff failed to raise a triable issue of fact as to whether or not he sustained a "serious injury" should be affirmed by this Court.

### OPINION OF THE COURT

Chief Judge KAYE.

In 1973 the Legislature enacted the "Comprehensive Automobile Insurance Reparations Act" (*see* L 1973, ch 13)—commonly known as the No-Fault Law—with the objective of promoting

prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts (*see* Governor's Mem approving L 1973, ch 13, 1973 McKinney's Session Laws of NY, at 2335). Every car owner must carry automobile insurance, which will compensate injured parties for "basic economic loss" occasioned by the use or operation of that vehicle in New York State, irrespective of fault (Insurance Law § 5102 [a]; § 5103). Only in the event of "serious injury" as defined in the statute, can a person initiate suit against the car owner or driver for damages caused by the accident (Insurance Law § 5104 [a]).[1]

No-Fault thus provides a compromise: prompt payment for basic economic loss to injured persons regardless of fault, in exchange for a limitation on litigation to cases involving serious injury (*see Montgomery v Daniels*, 38 NY2d 41, 50-51 [1975]). Abuse nonetheless abounds. From 1992 to 2000, reports of No-Fault fraud rose more than 1,700% and constituted 75% of all automobile fraud reports received by the Insurance Department in 2000 (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854 [2003]; *see also State Farm Mut. Auto. Ins. Co. v Mallela*, 4 NY3d 313 [2005]). There is, similarly, abuse of the No-Fault Law in failing to separate "serious injury" cases, which may proceed in court, from the mountains of other auto accident claims, which may not. That "basic economic loss" has remained capped at $50,000 since 1973 provides incentive to litigate.

In the context of soft-tissue injuries involving complaints of pain that may be difficult to observe or quantify, deciding what is a "serious injury" can be particularly vexing. Additionally, whether there has been a *"significant"* limitation of use of a body function or system (the threshold statutory subcategory into which soft-tissue injury claims commonly fall) can itself be a complex, fact-laden determination. Many courts have approached injuries of this sort with a well-deserved skepticism. Indeed, failure to grant summary judgment even where the evi-

---

1. Insurance Law § 5102 (d) defines a "serious injury" as "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

dence justifies dismissal, burdens court dockets and impedes the resolution of legitimate claims. As a hint of the dimension of the situation, in less than three years, *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002])—addressing similar issues—already has been cited more than 500 times in published decisions of our trial and appellate courts (representing only a small portion of the trial court activity).

In all three cases we decide today, as in *Toure*, plaintiffs claim to have suffered soft-tissue injuries—herniated discs—caused by car accidents, challenging us once again to articulate criteria that will enable serious injury claims to proceed yet prevent abuses that clog the courts and harm the public. We conclude that, even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate.

## *Pommells v Perez*

Plaintiff Anthony Pommells was in a three-car accident on March 15, 1998. Days later, on his lawyer's referral, plaintiff visited the North Bronx Medical Center where he had a neurological exam and began a course of daily physical therapy, which he continued for six months, while he remained out of work. Plaintiff initiated suit on June 24, 1998, alleging that he suffered serious injury under Insurance Law § 5102 (d).[2] Plaintiff sought no further medical treatment or review of his alleged accident-related injury for more than three years, when, on January 11, 2002, he consulted with the physician who furnished a report in this case.

In the course of his deposition, plaintiff revealed that in July 2000—more than two years after the accident—he experienced severe pain in his back and side, sending him to a hospital emergency room where doctors inserted a stent in his kidney. After four weeks, doctors determined that surgery was necessary. Plaintiff's kidney was removed on August 18, 2000, and he again was out of work for six months.

---

**2.** Plaintiff claimed a serious injury under two section 5102 (d) clauses: "significant limitation of use of a body function or system" and "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

Defendants sought summary judgment dismissing plaintiff's claim for failing to raise a triable issue of fact as to the existence of serious injury. In support of their motion, defendants submitted three doctors' reports. Neurologist Michael J. Carciente, based on an October 22, 2001 examination of plaintiff and plaintiff's medical records (including the unsworn MRI report and consideration of plaintiff's kidney problem), opined that there was "no evidence of a cervical or a lumbosacral spine radiculopathy" and "no evidence of a causally related neurologic disability." Radiologist Steven Brownstein, after also reviewing plaintiff's MRI, reported that plaintiff suffered "[n]o diffuse bulge or focal disc protrusion" and stated that he could detect only a muscle spasm in plaintiff. Radiologist Richard Rafal reported plaintiff suffered "[n]o gross acute pathology."

In response, plaintiff submitted an unsworn report by Dr. Leonid Slutsky[3] from the March 1998 examination, which, based on a stated series of range of motion tests, revealed limitations in mobility and recommended a course of follow-up medical treatment, including physical therapy, chiropractic treatment, painkilling medication and neurological examinations. Plaintiff also offered a May 11, 1998 unsworn report by Dr. Robert Kronenberg relying on somatosensory evoked potentials (or SSEPs), and which, based on nerve stimulations and recorded limitations in movement, recommended physical therapy, but did not opine as to injury or causation.

Finally, plaintiff submitted the sworn report of orthopedist Louis C. Rose, based on the range of motion tests he performed on January 11, 2002 (detailed in the report), opining that plaintiff had "MRI documented evidence of a herniated lumbar disk with clinical evidence of radiculopathy" and was at risk of "development of osteoarthritic changes in an advanced fashion" due to "the destabilization and micromotion of the cervical and lumbar spine." Dr. Rose noted that plaintiff's symptoms were "causally related to the history as stated," which included both the 1998 car accident and plaintiff's past medical history, notably "[s]ignificant for right-sided nephrectomy which was undertaken on 8/18/00."

The trial court granted defendants' motion for summary dismissal and the Appellate Division affirmed, two Justices dissenting, bringing this appeal before us as a matter of right (CPLR 5601 [a]). We now affirm.

---

**3.** Throughout this writing, where areas of specialization are not stated, it is because they are unidentified in the record.

■ Proof of a herniated disc, without additional objective medical evidence establishing that the accident resulted in significant physical limitations, is not alone sufficient to establish a serious injury. Defendants initially made a prima facie showing that plaintiff's alleged injuries did not satisfy No-Fault's serious injury threshold, leaving for plaintiff the burden to present objective medical proof of a serious injury causally related to the accident in order to survive summary dismissal. While plaintiff submitted objective evidence regarding physical limitations, his history revealed two interrupting factors: cessation of treatment six months after the accident and a kidney condition.

We first address the "gap in treatment" noted by the trial court and Appellate Division—the period of time between the end of plaintiff's physical therapy in 1998 and his visit to Dr. Rose to obtain an expert medical report in 2002.[4] Defendants argue that the "gap" both renders the medical expert's later opinion on causation speculative and places into question the seriousness of the injuries themselves.

In the present case, the so-called gap in treatment was, in reality, a cessation of all treatment. Plaintiff ended his physical therapy six months after the accident and sought no other treatment until years later, when he visited Dr. Rose in connection with this case. While a cessation of treatment is not dispositive—the law surely does not require a record of needless treatment in order to survive summary judgment—a plaintiff who terminates therapeutic measures following the accident, while claiming "serious injury," must offer some reasonable explanation for having done so. Here, plaintiff provided no explanation whatever as to why he failed to pursue any treatment for his injuries after the initial six-month period, nor did his doctors (*see Franchini v Palmieri*, 1 NY3d 536 [2003]).

Further, plaintiff failed to address the effect of his kidney disorder on his claimed accident injuries. Dr. Rose's report—the only competent evidence supporting plaintiff's response to the summary judgment motion (*see Grasso v Angerami*, 79 NY2d 813 [1991])—in fact noted the kidney surgery in plaintiff's medical history and then relied on that medical history in opining as

---

4. In recent No-Fault cases, "gap in treatment" has become a prominent factor in summary judgment motions (*see e.g. Garces v Yip*, 16 AD3d 375 [2d Dept 2005]; *Bent v Jackson*, 15 AD3d 46 [1st Dept 2005]; *Brown v Achy*, 9 AD3d 30 [1st Dept 2004]; *Rivera v Francis*, 7 AD3d 690 [2d Dept 2004]; *Melendez v Feinberg*, 306 AD2d 98 [1st Dept 2003]; *Vaughan v Baez*, 305 AD2d 101 [1st Dept 2003]).

to causation. Plaintiff's submission left wholly unanswered the question whether the claimed symptoms diagnosed by Dr. Rose were caused by the accident (*see Franchini*, 1 NY3d at 537; *see also Simms v APA Truck Leasing Corp.*, 14 AD3d 322 [1st Dept 2005]; *Blackwell v Fraser*, 13 AD3d 157 [1st Dept 2004]; *Mooney v Edwards*, 12 AD3d 424 [2d Dept 2004]; *Shaw v Looking Glass Assoc., LP*, 8 AD3d 100 [1st Dept 2004]; *Shinn v Catanzaro*, 1 AD3d 195 [1st Dept 2003]; *Lagois v Public Adm'r of Suffolk County*, 303 AD2d 644 [2d Dept 2003]; *Pajda v Pedone*, 303 AD2d 729 [2d Dept 2003]; *Monette v Keller*, 281 AD2d 523 [2d Dept 2001]). On this record, we conclude that defendants' motion for summary dismissal of the complaint was correctly granted.

### Brown v Dunlap

On June 25, 1999, plaintiff, then 17 years of age, was a rear seat passenger in a vehicle owned by defendant Athena Dunlap and operated by defendant Louis Saunders (collectively Saunders) when it was struck from behind by a vehicle owned by defendant Trucklease Corporation and operated by defendant Gilberto Schasiepen (collectively Schasiepen). An ambulance transported plaintiff to St. Luke's-Roosevelt Hospital, where he complained of neck and back pain. After x-rays revealed no fracture, plaintiff was given pain medication and released. A week later, referred by his counsel, plaintiff sought treatment from Dr. Samuel Melamed who, in August 1999, sent him to Ultra Diagnostics Imaging for an MRI of the lumbosacral spine. At that time, radiologist Mark Freilich reported: "Bulging is seen of discs L3-L5. There is herniation of disc L5-S1 towards the right and centrally indenting the thecal sac. Desiccative changes are noted of herniated disc L5-S1 as well."

In September 1999, neurologist Daniel Feuer diagnosed plaintiff with a lumbosacral herniated disc and lumbosacral radiculitis. He recommended that plaintiff continue a course of physical therapy supplemented by over-the-counter anti-inflammatory medications. Additionally, Dr. Melamed, relying on Dr. Freilich's earlier MRI report, noted spasms and tenderness and opined that, as a result of the accident, plaintiff sustained an acute cervical sprain and a lumbosacral sprain, and explained that plaintiff's continued pain and limitation of movement over the spine was a permanent injury. In March 2000, plaintiff commenced this action alleging that he had sustained serious injury within the meaning of Insurance Law § 5102 (d).

576

Following joinder of issue, defendant Schasiepen moved for summary judgment dismissing the complaint on the ground that plaintiff did not suffer a serious injury, and submitted the sworn reports of radiologist Jessica Berkowitz, orthopedist Norman Heyman and neurosurgeon Donald Frank. Defendant Saunders thereafter joined in the motion, adopting Schasiepen's arguments and submissions, and adding the reports of orthopedic surgeon Howard Baruch and neurologist Robert April. According to defendants' medical evidence, any limitations plaintiff suffered as a result of the accident were minor at best. However, those injuries that existed, according to Dr. Frank and Dr. Baruch, were causally related to the car accident. Only defendants' radiologist, Dr. Berkowitz, noted—without more—that the "[d]isc desiccation and minimal diffuse disc bulge" were "chronic and degenerative in origin."

In opposition, plaintiff submitted the affirmation of his treating physician, Dr. Melamed, opining that plaintiff suffered from "a herniated disc, confirmed by MRI testing, at L5-S1 towards the right centrally indenting the thecal sac; bulging discs, also confirmed by MRI, at levels L3-L5; and acute cervical sprain." He added that his April 22, 2002 examination revealed numerical deficiencies in plaintiff's extension and flexion of the cervical and lumbar spine, and he opined, with a reasonable degree of medical certainty, that plaintiff's "inability to move his spine (lower back and neck) to the full range of what is normal [constituted a] . . . definite severe and permanent injury" that was causally related to the accident. Finally, Dr. Melamed explained that "[w]hen it became clear, after extensive therapy in my office, that further treatment and visits would be only palliative in nature, upon discharge from this office, I instructed [plaintiff] as to strengthening and stabilizing home exercises, which consisted of back and neck stretches and strengthening techniques." Plaintiff's own affidavit noted that he continues to suffer "excruciating" pain in his neck and lower back when he stands for more than 15 minutes, and can no longer lift heavy objects; experiences numbness in his legs when he remains too long in the same position; and cannot continue his prior sports activities.

Based on these submissions, Supreme Court granted defendants' motions dismissing the complaint, holding that plaintiff failed to explain a 2½ year gap in treatment and also fatally relied on unsworn MRI reports. The Appellate Division affirmed, holding that plaintiff failed to both furnish an adequate explana-

tion of the gap in treatment and address the suggested chronic disc condition. Two Justices dissented, bringing the appeal before us as a matter of right. We now reverse and reinstate the complaint.

Defendants' submissions, indicating that plaintiff suffered only minor limitations as a result of the automobile accident, were sufficient to meet their initial burden. Plaintiff's submissions in opposition, however, raise material issues of fact as to whether he sustained a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system."

On plaintiff's behalf, Dr. Melamed identified measurements of loss of range of motion in plaintiff's cervical and lumbar spine, and on that predicate opined that plaintiff suffered severe and permanent injuries as a result of the accident. Dr. Melamed concluded that plaintiff's "continuing condition accounts for [his] extreme pain, stiffness and inability to move his . . . spine[ ] to the degree of range of motion characteristic of a normal twenty year-old" (*see Toure*, 98 NY2d at 350-351, 353; *Melino v Lauster*, 195 AD2d 653, 655 [3d Dept 1993], *affd* 82 NY2d 828 [1993]). Moreover, Dr. Melamed, in his own sworn statement, noted that the MRI of plaintiff's spine—taken by Dr. Freilich approximately two months after the accident, and made part of the record—revealed one herniated and three bulging discs (*cf. Toure [Nitti v Clerrico]*, 98 NY2d at 357-358).[5]

Neither of the dispositive grounds in *Pommells* applies here. First, as to the so-called gap in treatment—the 2½ years when plaintiff's injuries received no outside attention—Dr. Melamed explained that, once he determined further medical therapy would "be only palliative in nature," he terminated treatment and instructed plaintiff to continue exercises at home. A plaintiff need not incur the additional expense of consultation, treatment or therapy, merely to establish the seriousness or causal relation of his injury. Unlike *Pommells*, plaintiff's cessation of treatment was explained sufficiently to raise an issue of fact and survive summary judgment.

Second, as to an alleged preexisting condition, there is only Dr. Berkowitz's conclusory notation, itself insufficient to establish that plaintiff's pain might be chronic and unrelated to the

---

5. Though the MRI reports were unsworn, the various medical opinions relying on those MRI reports are sworn and thus competent evidence (*see Grasso*, 79 NY2d at 814).

accident. As opposed to the undisputed proof of plaintiff's contemporaneous, causally relevant kidney condition in *Pommells*, here even two of defendants' other doctors acknowledged that plaintiff's (relatively minor) injuries were caused by the car accident. On this record, plaintiff was not obliged to do more to overcome defendants' summary judgment motions (*contrast Shinn*, 1 AD3d 195 [2003]; *Lorthe v Adeyeye*, 306 AD2d 252 [2d Dept 2003]), and we therefore reverse the Appellate Division's order and reinstate the complaint.

### Carrasco v Mendez

On May 31, 2000, defendant's car struck plaintiff's vehicle as plaintiff was attempting to park and, on July 24, 2000, plaintiff commenced this action alleging that he suffered an accident-related "serious injury." Following joinder of issue, defendant sought summary dismissal of the complaint on the ground that plaintiff had not sustained a serious injury within the meaning of the No-Fault Law.

In support of her motion, defendant submitted two reports of the doctor, Vadim Miloradovich, who treated plaintiff for several months immediately following the accident. Initially, Dr. Miloradovich diagnosed plaintiff with "[a]nterior spur formation of C5-C6 and C6-C7 disc," traumatic herniation of the disc (C4-C5, C5-C6, C6-C7 and L2-L3) and "[d]isc bulge L3-L4," and opined that plaintiff's injuries were a direct result of the accident. Several months later, however, in his "Final Report," Dr. Miloradovich noted that "*any degenerative condition that existed prior to [plaintiff]'s current trauma ha[d] served to destabilize the spine*" and that "although the return to '*Base line*' ha[d] been achieved, prior existing conditions may continue with limited symptomatology." Having determined that therapy would no longer benefit plaintiff, Dr. Miloradovich discharged plaintiff in December 2000 "with instruction to continue physical therapy and exercise at home for maintenance and to preclude exacerbation."

Defendant also proffered the report of orthopedic surgeon Robert Orlandi, who conducted a physical examination of plaintiff on June 25, 2002 and reviewed his medical records, including reports of MRIs of his cervical and lumbar spine. Dr. Orlandi reported that the MRI reports of plaintiff's spine revealed degenerative conditions, including a "pre-existent spondylitic spur formation at C5/C6 and C6/C7" and disc desiccation at L2/L3 which was indicative of degenerative disc dis-

ease. He concluded that his orthopedic examination did not "document the presence of permanent residuals or a musculoskeletal disability."

Plaintiff rejoined with the affidavit of Dr. Emmanuel Lambrakis, who explained that he had treated plaintiff since August 30, 2001—beginning more than a year after the accident. Dr. Lambrakis averred that his November 21, 2002 physical examination of plaintiff—conducted after defendant's motion—revealed specific numerical deficiencies in plaintiff's extension, flexion and rotation of the cervical and lumbar spine. In addition, Dr. Lambrakis noted that he found "severe muscle spasms in the cervical spine with excruciating pain when compressing C3 and C7" and that "[t]he pain complained of and the loss of motion in the cervical spine is completely consistent with the disc herniations diagnosed at C4, 5, 6 and 7, as well as the anterior spur formation on C5, 6 and 7, after MRIs of the cervical spine were conducted after the accident." He also explained that "the degree of pain exhibited by the Plaintiff with regard to his lumbar spine is consistent with the herniated disc at L2-L3, as well as a protrusion bulge on the L3-L4 level," also diagnosed after an MRI. Dr. Lambrakis opined to a reasonable degree of medical certainty that plaintiff "sustained permanent severe partial disabilities as a result of the motor vehicle accident."

Based on these submissions, Supreme Court granted defendant's motion and dismissed the complaint. The Appellate Division unanimously affirmed. We granted leave and now affirm.

█ As in *Pommells* and *Brown*, defendant's submissions shifted to plaintiff the burden of coming forward with evidence indicating a serious injury causally related to the accident. Unlike *Brown*, however, defendant presented evidence of a preexisting degenerative disc condition causing plaintiff's alleged injuries, and plaintiff failed to rebut that evidence sufficiently to raise an issue of fact.

Dr. Orlandi, after physically examining plaintiff and reviewing prior medical records, including MRIs and x-rays, concluded that the pain in areas identified as herniated by Dr. Miloradovich was caused by preexisting and degenerative conditions. Even plaintiff's original doctor, Dr. Miloradovich, noted, in his final report, that plaintiff's pain was related to a prior condition.

While plaintiff provided Dr. Lambrakis's expert report of specific losses of range of motion in plaintiff's spine, opining

that plaintiff suffered serious and permanent injuries which were causally related to the accident (*Lopez v Senatore*, 65 NY2d 1017, 1020 [1985]), plaintiff did not refute defendant's evidence of a preexisting degenerative condition. To the contrary, the Lambrakis report supplied by plaintiff explained that the pain and loss of range of motion in the cervical spine was entirely consistent with those formations identified by the MRI and set forth by Drs. Miloradovich and Orlandi as related to a degenerative condition. In this case, with persuasive evidence that plaintiff's alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forward with evidence addressing defendant's claimed lack of causation. In the absence of any such evidence, we conclude—as did the trial court and Appellate Division—that defendant was entitled to summary dismissal of the complaint (*see Franchini*, 1 NY3d at 537; *see also Licari v Elliott*, 57 NY2d 230, 237 [1982]).

Accordingly, in *Pommells v Perez* and *Carrasco v Mendez*, the orders of the Appellate Division should be affirmed, with costs, and in *Brown v Dunlap*, the order of the Appellate Division should be reversed, with costs, and defendants' motions for summary judgment denied.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

In *Pommells v Perez:* Order affirmed, with costs.

In *Brown v Dunlap:* Order reversed, with costs, and defendants' motions for summary judgment denied.

In *Carrasco v Mendez:* On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed, with costs.