# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

105

CA 13-00928

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

JAMES R. FRENCH, PLAINTIFF-APPELLANT,

V                                          MEMORANDUM AND ORDER

DAUN M. SYMBORSKI AND FRANK L. SYMBORSKI,
DEFENDANTS-RESPONDENTS.

LYNN LAW FIRM, LLP, SYRACUSE (PATRICIA A. LYNN-FORD OF COUNSEL), FOR PLAINTIFF-APPELLANT.

LAW OFFICES OF DESTIN C. SANTACROSE, BUFFALO (ELISE CASSAR OF COUNSEL), FOR DEFENDANTS-RESPONDENTS.

-----------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Onondaga County (Brian F. DeJoseph, J.), entered March 4, 2013. The order, insofar as appealed from, granted the motion of defendants for summary judgment dismissing the complaint.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: In this personal injury action arising from a motor vehicle accident, plaintiff appeals from an order granting defendants' motion for summary judgment dismissing the complaint. According to plaintiff, Supreme Court erred in determining that he did not sustain a serious injury within the meaning of Insurance Law § 5102 (d). We reject that contention. In support of the motion, defendants established that plaintiff's pain in his neck and shoulders was related to preexisting degenerative conditions and that there was no evidence of an acute traumatic injury arising from the subject accident (*see Spanos v Fanto*, 63 AD3d 1665, 1666). Defendants also established that plaintiff sustained "only a mild injury as a result of the accident," as opposed to a significant or permanent injury (*Gallo v Rieske*, 77 AD3d 1343, 1344; *see Beaton v Jones*, 50 AD3d 1500, 1501). We note that, following the accident, plaintiff was able to walk around and, although he was taken to the hospital, he was released that same day with a prescription for pain medication. An X ray or CT scan taken at the hospital showed no broken bones or other abnormalities. We further note that plaintiff did not miss any work as a result of his injuries, and examinations by his own physicians showed that he regularly had a full range of motion in his neck and back, albeit with a degree of pain.

The burden of proof thus shifted to plaintiff "to come forward

with evidence addressing defendant[s'] claimed lack of causation" (*Carrasco v Mendez*, 4 NY3d 566, 580; *see Wilson v Colosimo*, 101 AD3d 1765, 1766), and plaintiff failed to meet that burden.  Contrary to plaintiff's contention, the affidavit of his treating physician was insufficient to raise a triable issue of fact.  Although plaintiff's physician stated that plaintiff has a "disability related to his neck . . . in the range of 30 to 60 percent," she did not identify the range of motion tests she conducted upon plaintiff or otherwise explain how she arrived at that conclusion.  Moreover, plaintiff's physician, who acknowledged plaintiff's preexisting conditions, "failed to specify how plaintiff's conditions were caused or further exacerbated" by the subject accident (*Hedgecock v Pedro*, 93 AD3d 1143, 1144; *see Webb v Bock*, 77 AD3d 1414, 1415).

All concur except WHALEN, J., who dissents and votes to modify in accordance with the following Memorandum:  I respectfully dissent because I disagree with the majority's conclusion that defendants met their initial burden with respect to the 90/180-day category of serious injury (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324).  I would thus modify the order by denying in part defendants' motion for summary judgment and reinstating the complaint with respect to the 90/180-day category of serious injury within the meaning of Insurance Law § 5102 (d).

Defendants' submissions failed to establish that plaintiff suffered only some " 'slight curtailment' " of his usual activities during no less than 90 of the 180 days immediately following the accident, inasmuch as they did not demonstrate what plaintiff's usual and customary daily activities were, much less that plaintiff could not perform substantially all of those activities (*Gaddy v Eyler*, 79 NY2d 955, 958; *see Paolini v Sienkiewicz*, 262 AD2d 1020, 1020; *Russell v Knop*, 202 AD2d 959, 960).  Defendants, instead, chose to rely almost exclusively on the fact that plaintiff did not miss any work as a result of his injuries.  While plaintiff testified that he continued to work after the accident and took time off from work only to attend appointments with his doctors, plaintiff's duties at work were different after the accident than they were before it (*cf. Gaddy*, 79 NY2d at 958; *Licari v Elliott*, 57 NY2d 230, 238).  At the time of the accident, plaintiff was a technician at a nuclear power plant and he performed calibrations, testing and repairs on equipment.  Subsequent to the accident, he was assigned a supervisory position as an outage coordinator, i.e., a desk job.  Plaintiff's daily and customary activities at work had changed and become much more sedentary.  I further note that plaintiff's deposition occurred nearly three years after the accident, long after the relevant 180-day time frame (*see generally Lowell v Peters*, 3 AD3d 778, 780).  This fact is important because defendants' attorney asked plaintiff at the deposition, "Is there anything that you can't do today that you could do prior to the accident, any activities at all?"  What plaintiff could do as of the date of the deposition is irrelevant; the relevant inquiry concerns what he could or could not do in the 180 days immediately following the accident.  Therefore, any information gleaned about plaintiff's daily activities as a result of that question is irrelevant to the analysis of whether he sustained a serious injury under the 90/180-day

category.  Without establishing a baseline of plaintiff's activities during the relevant time frame, defendants did not meet their initial burden (*see Ames v Paquin*, 40 AD3d 1379, 1380).

Additionally, when viewing the evidence in the light most favorable to plaintiff, the nonmoving party (*see Nichols v Xerox Corp*., 72 AD3d 1501, 1502), I note that there was evidence that plaintiff's work duties had changed significantly and, thus, a question of fact exists regarding whether plaintiff was able to perform his usual daily activities for 90 of the 180 days immediately following the accident.

I also note my concern with the majority's apparent reliance upon the affirmed report of defendants' medical expert, who opined that plaintiff suffers from a "multilevel degenerative" condition "with no indication of any acute traumatic injury" and "is obviously not disabled" in determining that defendants met their initial burden, while at the same time concluding that the affidavit of plaintiff's treating physician is insufficient to raise an issue of fact with respect to causation.  Defendants' expert based his opinion on the findings contained in what may be an unsworn MRI report, not included in the record, interpreting an MRI film that he did not review and that is also not included in the record.  Plaintiff's treating physician, on the other hand, disagreed with the assessment of defendants' expert that there was no evidence of traumatic injury, based on her review of plaintiff's MRI films and medical records and the fact that plaintiff was asymptomatic prior to the accident, as demonstrated by plaintiff's "medical history" and the fact that his "pre-existing degenerative changes" did not "prompt him to seek any medical attention" (*see generally Fanti v McLaren*, 110 AD3d 1493, 1494; *Verkey v Hebard*, 99 AD3d 1205, 1206; *Austin v Rent A Ctr. E., Inc*., 90 AD3d 1542, 1543-1544; *Terwilliger v Knickerbocker*, 81 AD3d 1350, 1351; *Mack v Pullum*, 37 AD3d 1063, 1063).  Only plaintiff's treating physician appears to have reviewed plaintiff's medical records prior to the accident, there are no pre-accident MRIs for comparison, and, contrary to the majority's conclusion, plaintiff's "submissions in opposition to the motion did . . . adequately address how [the neck injury], in light of [his] past medical history, [is] causally related to the subject accident" (*Webb v Bock*, 77 AD3d 1414, 1415 [internal quotation marks omitted]).

Entered:  June 13, 2014                      Frances E. Cafarell
                                             Clerk of the Court