OPINION OF THE COURT
Pigott, J.
The issue presented in this appeal is whether a health insurer who pays for medical treatment that should have been covered by the insured’s no-fault automobile insurance carrier may maintain a reimbursement claim against the no-fault insurer within the framework of the Comprehensive Motor Vehicle Insurance Reparations Act (Insurance Law § 5101 et seq.) (the No-Fault Law). Because New York’s “no-fault” statutory law and regulatory scheme does not contemplate such reimbursement to a health insurer, as opposed to a health care provider, we hold that it may not.
I.
On April 25, 2008, Luz Herrera sustained personal injuries while operating a vehicle insured by defendant Hanover Insurance Company. At the time of the accident, Herrera also had private health insurance through plaintiff Aetna Health Plans.
Herrera received medical treatment for her injuries from various medical providers. Although Aetna alleges that the bills should have been paid by Hanover, the no-fault insurer, *580 the medical providers submitted some of their bills for treatment directly to Aetna. Aetna paid the bills, initially totaling $19,649.10.
Aetna, through its representative, wrote to Hanover in March 2009 seeking reimbursement for the medical bills it had paid, but Hanover did not respond. At the same time, Aetna filed a lien for reimbursement should Herrera recover in a personal injury action that she had brought against the alleged tortfeasor who caused her injuries in the accident.
On January 6, 2010, Herrera, through her attorneys, submitted copies of the medical bills paid by Aetna to Hanover, demanding payment. Hanover did not respond to Herrera’s demands either.
Herrera then demanded arbitration pursuant to her policy with Hanover, claiming that she was entitled to the no-fault benefits because Aetna maintained a lien against her for reimbursement and Hanover, who was responsible for the bills, had neither paid nor denied coverage for the bills submitted. The arbitrator denied Herrera’s claim in its entirety, reasoning that the documents submitted by Herrera — copies of the medical bills paid by Aetna — were not “bills.”[1] Further, the arbitrator asserted that even if they were considered “bills,” Herrera lacked standing to make the claim because Aetna had paid them. The arbitrator determined that, while Aetna had a lien against Herrera, until that lien was satisfied, Herrera lacked standing to pursue her claim. A Master Arbitrator affirmed that decision.
In addition to the payments that were the subject of the arbitration, Herrera’s medical providers continued to submit bills to Aetna for her ongoing treatment, and Aetna continued to pay an additional $23,525.73 in medical bills.
Thereafter, Herrera, through her attorneys, resubmitted all of the medical bills to Hanover and informed it that she had assigned her rights against Hanover to Aetna.
II.
Aetna commenced this action against Hanover, seeking reimbursement for the amounts paid on Herrera’s behalf, plus interest and attorneys’ fees. Hanover answered, generally denying Aetna’s allegations and asserting affirmative defenses.
*581 Aetna moved for summary judgment, arguing that Hanover breached its contract of insurance with its assignor, Herrera. Aetna claimed that as the assignee of Herrera’s claim for no-fault benefits, it stood in the shoes of Herrera and was entitled to reimbursement for the monies it paid for the medical treatment Herrera received resulting from the motor vehicle accident.
Hanover opposed the motion and cross-moved to dismiss the complaint based upon lack of standing, arguing that Aetna was not entitled to direct reimbursement under 11 NYCRR 65-3.11 (a) because it was an insurance company and not a provider of health care services, the only type of assignee permitted by regulation, and Aetna was not in privity of contract with Hanover. Hanover cross-moved for summary judgment dismissing the complaint as neither Herrera nor Aetna timely submitted the medical bills to Hanover.
Aetna responded that Hanover was judicially estopped from arguing that Aetna lacked standing because in the prior arbitration Hanover asserted — and the arbitrators agreed— that Aetna was the proper party with standing, not Herrera.
Supreme Court granted Hanover’s cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), and denied Aet-na’s motion for summary judgment on liability as moot (2013 NY Slip Op 33221[U] [Sup Ct, Bronx County 2013]). The court concluded that because Aetna was not a “health care provider” under the no-fault statute, it was not entitled to direct payment of no-fault benefits (id. at *5). It further held that Aetna was not in privity of contract with Hanover and had not shown that it was an intended third-party beneficiary of Hanover’s contract with Herrera. Finally, the court determined that Aetna could not sustain a cause of action under subrogation principles because “[t]here [was] ... no authority permitting a health insurer to bring a subrogation action against a no-fault insurer for sums the health insurer was contractually obligated to pay to its insured” (id. at *6).
The Appellate Division unanimously affirmed (116 AD3d 538 [1st Dept 2014]). The Court determined that Aetna “is not a ‘health care provider’ under [11 NYCRR 65-3.11 (a)], but rather a heath care insurer” that Hanover had no legal obligation to directly reimburse (id. at 539). It concluded that the provisions of Insurance Law §§ 5105 and 5106 (d) provide for “a limited window of arbitration between no-fault insurers” that “does not *582 pertain to a health insurer such as Aetna” and consequently Aetna could not maintain a subrogation claim against Hanover (id.). The Court stated that, because there was no “privity of contract” between Aetna and Hanover, nor was Aetna a “third-party beneficiary of the contract” between Hanover and Herrera, Aetna could not assert a breach of contract claim against Hanover (id.).
III.
Article 51 of the Insurance Law, enacted as the Comprehensive Motor Vehicle Insurance Reparations Act (see L 1973, ch 13), governs payments to reimburse a person for basic economic loss for personal injury arising out of the use or operation of a motor vehicle, irrespective of fault. Article 51 is commonly known as the No-Fault Law. The purpose of the No-Fault Law was to promote “prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts” (Pommells v Perez, 4 NY3d 566, 570-571 [2005] [citation omitted]). Under no-fault, an insured who has been in a motor vehicle accident can claim first party benefits from her motor vehicle insurer of up to $50,000 to cover “basic economic loss” as defined in Insurance Law § 5102 (a). In the event of “serious injury” as defined in the statute, a person may initiate suit against the car owner or driver for damages caused by the accident (Insurance Law § 5104 [a]).
The applicable regulation, 11 NYCRR 65-3.11 (a), provides, in relevant part, that “[a]n insurer shall pay benefits for any . . . loss[,] other than death benefits, directly to the applicant or, . . . upon assignment by the applicant . . . , shall pay benefits directly to providers of health care services” (emphasis added). Aetna concedes that as a health insurer it is not a “provider of health care services” as contemplated by the language of this regulation (see Health Ins. Plan of Greater N.Y.v Allstate Ins. Co., 2007 NY Slip Op 33925[U] [Sup Ct, NY County 2007]; see also Ops Gen Counsel NY Ins Dept No. 08-01-08 [Jan. 2008]). Aetna argues, however, that it stands in Herrera’s shoes because Herrera assigned her no-fault rights to it.
This argument fails for two reasons. First, since Herrera’s health care providers were able to bill and recoup payment from Aetna, an assignment by Herrera of her no-fault rights had already been made, leaving her with no rights to assign to Aetna. Second, by its very language, the no-fault regulation *583 permits only the insured — or providers of health care services by an assignment from the insured — to receive direct no-fault benefits. Because Aetna does not fall under the term “health care provider,” Herrera could not assign her rights to it.[2]
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The documents stated, “This is not a bill;

. Contrary to the view of the dissent, there is nothing inequitable in adhering to the “no-fault” statutory and regulatory law in resolving this claim for reimbursement.