Ortiz v Boamah (2019 NY Slip Op 01129)





Ortiz v Boamah


2019 NY Slip Op 01129


Decided on February 14, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 14, 2019

Sweeny, J.P., Gische, Kahn, Oing, Singh, JJ.


8021 304309/13

[*1]Ana L. Ortiz, Plaintiff-Appellant,
v
Elvis Boamah, et al., Defendants-Respondents.


Omrani & Taub, P.C., New York (Michael A. Taub of counsel), for appellant.
Baker, McEvoy, Morrissey & Moskovits, P.C., Brooklyn (Robert D. Grace of counsel), for respondents.



Order, Supreme Court, Bronx County (Norma Ruiz, J.), entered on or about June 14, 2017, which, in this action for personal injuries sustained in a motor vehicle accident, granted defendants' motion for summary judgment dismissing the complaint, unanimously modified, to the extent of reinstating the serious injury claim relating to the permanent consequential or significant limitation in use of a body function or system, and otherwise affirmed, without costs.
On its motion for summary judgment, defendants prima facie established that plaintiff did not suffer a serious injury to her thoracic or lumbar spine as a result of the subject accident (Insurance Law § 5102[d]). Defendants submitted plaintiff's medical records and the affirmed report of an orthopedist who, following examination and review of the medical records, found that plaintiff had preexisting conditions and no evidence of injuries caused by trauma (see Rivera v Fernandez & Ulloa Auto Group, 123 AD3d 509 [1st Dept 2014], affd 25 NY3d 1222 [2015]; Alvarez v NYLL Mgt. Ltd., 120 AD3d 1043 [1st Dept 2014], affd 24 NY3d 1191 [2015]). No imaging had been conducted of plaintiff's thoracic spine and the orthopedist stated that his examination showed that the thoracic spine was normal, except for scoliosis. As to plaintiff's lumbar spine, the orthopedist stated that plaintiff's own MRI reports revealed degenerative stenosis and spondylosis and plaintiff's medical records revealed preexisting arthritis and scoliosis. The orthopedist opined that there was no indication that plaintiff suffered any separate injury to her lumbar spine or that her preexisting and degenerative conditions had been aggravated by the accident. Defendants also argued that plaintiff sought no treatment after the accident and failed to explain her gaps in treatment (see Pommells v Perez, 4 NY3d 566, 574 [2005]).
In opposition, plaintiff raised a triable issue of fact that the injuries to, at least, her lumbar spine were caused by the underlying motor vehicle accident. She also adequately explained any gap in treatment.
Plaintiff was operating her motor vehicle when it was struck by a taxi operated by defendant Adjin and owned by defendant Boamah. Plaintiff, who was 70 years old, alleged that the accident "caused, created, exacerbated and/or reactivated" injuries to her lumbar spine. These injuries included various disc herniations and posterior spondylosis that eventually required an L4-5 laminectomy, interbody cage fusion, and pedicle screw fixation. Although she did not seek medical treatment by EMTs at the scene of the accident, plaintiff began experiencing neck and back pain a few days afterwards. Approximately three weeks after the accident, plaintiff sought treatment. An MRI revealed, inter alia, scoliosis, degenerative disc disease, and spondylolisthesis. Plaintiff continued treatment, which included physical therapy, until April 2011, when her treating physician recommended discontinuing the physical therapy, as it was no longer beneficial, and returning only when needed. At the time of discharge, however, her treating physician documented that plaintiff still experienced pain and there was tenderness on the lumbar spine.
In July 2012 plaintiff presented to a hospital's emergency department, where she reported experiencing chronic back pain for the prior two months. Subsequent medical imaging showed, inter alia, degenerative disc disease, spondylolisthesis, and multilevel disc bulges and herniations. She had surgery two months later in September.
Since plaintiff's own medical records showed evidence of a preexisting degenerative condition in her spine, she was required to address those findings and explain why her symptoms were not related to the preexisting condition (Giap v Hathi Son Pham, 159 AD3d 484, 485 [1st Dept 2018]). An explanation that the plaintiff was previously asymptomatic and the accident aggravated an underlying pre-existing condition, rendering the plaintiff symptomatic, is sufficient to raise an issue of fact as to causation (id. at 486 ["To the extent plaintiff's physicians asserted that plaintiff Pham had degenerative joint disease which was common for her age, that she was previously asymptomatic, that the accident aggravated her underlying degenerative joint disease, and that trauma increases the rate of disc desiccation, rendering her now symptomatic, this was sufficient to raise an issue of fact as to causation"] [internal quotations marks omitted]; see McIntosh v Sisters Servants of Mary, 105 AD3d 672, 673 [1st Dept 2013]).
Plaintiff submitted the reports of both her treating neurosurgeon and treating chiropractor, each of whom independently opined that because she had no history of symptoms or medical treatment for her spine before the accident, her injuries were caused, or at least aggravated by the motor vehicle accident. Plaintiff's neurosurgeon noted that although plaintiff has chronic degenerative spinal stenosis and spondylolisthesis, she had no prior history of back pain and leg pain. He opined that "[i]t is not unusual for such a chronic pathology to become aggravated by a relatively mild-to-moderate trauma." He further opined, within a reasonable degree of medical certainty, that the motor vehicle accident aggravated plaintiff's latent asymptomatic age related degenerative spine conditions and was the cause of her symptoms. Plaintiff's chiropractor also opined that because plaintiff did not seek medical treatment for her preexisting back conditions prior to the accident, the accident had activated, accelerated, or aggravated those conditions as well as causing additional damage. This is sufficient to raise an issue as to causation (McIntosh, 105 AD3d at 673).
Additionally plaintiff has adequately explained any gap in treatment. "[A] plaintiff who terminates therapeutic measures following the accident, while claiming serious injury,' must offer some reasonable explanation for having done so" (Pommells, 4 NY3d at 574; Giap, 159 AD3d at 486). Therefore, a gap in treatment may be dispositive on a serious injury threshold motion, unless it is explained (Pommells, at 574; cf. Rubensccastro v Alfaro, 29 AD3d 436 [1st Dept 2006]).
Plaintiff sought continuous, albeit different modalities of treatment since the accident, including chiropractic care for four years following her surgery. The only possible gap in treatment occurred during the 15 month period from the first time plaintiff stopped physical therapy until the time she was treated in the hospital emergency department for back pain. However, plaintiff has provided a reasonable explanation for this gap in treatment. In 2011, her condition, while improved, had not completely abated but her physician saw no further benefit to continuing physical therapy (see Wenegieme v Harriott, 157 AD3d 412, 412-413 [1st Dept 2018]["Plaintiff's gap in treatment is not dispositive, as she explained that, after 11 months of therapy, her physician told her any further treatment would palliative in nature. Moreover, her physician stated that her condition remained persistent throughout treatment"]). She continued to take over-the-counter medication throughout, and sought intervention only as the pain increased. Significantly, her decision to present at the emergency room was not triggered by the course of this litigation and led to the decision to seek surgery (cf. Vaughan v Baez, 305 AD2d 101 [1st Dept 2003] [medical expert was not treating physician and sole examination occurred after summary judgment motion]).
Dismissal of the 90/180-day claim was appropriate, however, since no triable issue of [*2]fact existed as to whether she was confined for the appropriate period. Plaintiff testified that she was confined to bed for only one week following the accident (see e.g. Mitrotti v Elia, 91 AD3d 449, 450 [1st Dept 2012]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 14, 2019
CLERK