## Clarke v Beauzile

2025 NY Slip Op 31876(U)

February 18, 2025

Supreme Court, Bronx County

Docket Number: Index No. 25311/2018E

Judge: Patsy Gouldborne

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX, PART 13

------------------------------------------------------------------------X

DARYL W CLARKE,

                Plaintiff(s)

          -against-

MARTIAL BEAUZILE and VENTURE LEASING
LLC,

                Defendant(s)

------------------------------------------------------------------------X

**Index №. 25311/2018E**

**Hon.    PATSY GOULDBORNE**

Justice Supreme Court

The following papers were read on this motion (**Seq. No. 2**) for **SUMMARY JUDGMENT- Threshold**

| Notice of Motion - Affirmation and Exhibits | NYSCEF Doc. # 33-41 |
|---|---|
| Affirmation in Opposition and Exhibits | NYSCEF Doc. # 49-55 |
| Reply Affirmation | NYSCEF Doc. # 56-57 |

Upon the foregoing papers, Defendants Martial Beauzile and Venture Leasing LLC seek an order granting summary judgment and dismissing Plaintiff's complaint on the grounds that the Plaintiff Daryl W. Clarke has not sustained a "serious injury" pursuant to the provisions of Insurance Law §§ 5102(d) and for such other and further relief as this Court deems necessary and proper. In the interests of judicial economy, these motions are decided together.

This action stems from a motor vehicle accident that occurred on December 23, 2015. Plaintiff Daryl W. Clarke alleges he sustained serious injuries to his cervical spine, lumbar spine, right shoulder, right elbow, and right knee. Plaintiff alleges that she sustained a "serious injury" under the "fracture" "permanent loss of use," "permanent consequential limitation," "significant limitation," and/or "90/180-day" categories of the Insurance Law.

In support of the motion Defendants submit; Daryl W. Clarke's deposition transcript; an attorney's affirmation; the Bill of Particulars, and the affirmed reports of Salvatore Corso, M.D., and Scott Springer, D.O.

Dr. Corso examined Plaintiff on June 6, 2022, finding normal ranges of motion in the Plaintiff's cervical spine, lumbar spine, right shoulder, right elbow, and right knee. Dr. Corso noted that multiple arthroscopic portal scars on Plaintiff's right knee. Dr. Corso concluded that the injuries to Plaintiff's cervical spine, lumbar spine, right shoulder, right elbow, and right knee had resolved; and Plaintiff's alleged arthroscopic shoulder surgery had healed.

Dr. Springer reviewed the Plaintiff's MRI films of the cervical spine, lumbar spine, and right shoulder, October 10, 2019. Dr. Springer's found no fractures, dislocation, or subluxations. With respect to the Plaintiff's right shoulder, Dr. Springer's found degenerative changes of the rotator cuff, a SLAP tear which predates the subject accident; and a partial thickness tear. With respect to Plaintiff's cervical spine, the MRI revealed, among other things, mild degenerative changes of the C3-C4, C4-C5, C5-C6, C6-C7 and C7-Tl discs; and disc bulges of the C3-C4, C4-C5 and C5-C6. With respect to the Plaintiff's lumbar spine, Dr. Springer's found a disc bulge at the L4-L5. Dr. Springer concluded that Plaintiff's claimed injuries were not causally related to the subject accident.

Plaintiff testified that he went to physical therapy until April of 2019. [Tr at 101]. Plaintiff testified to a subsequent accident involving injuries to his neck, back, and left shoulder. [Tr at 100-103].

1

[* 1]

Movants' submission of Dr. Corso and Dr. Springer's reports, establishes, *prima facie*, that Plaintiff did not sustain a "significant limitation" or "permanent consequential limitation" of his cervical spine, lumbar spine, right shoulder, right elbow, and right knee. *Velazquez v City of New York*, 200 AD3d 547, 548 [1st Dept 2021].

In opposition, Plaintiff Daryl W. Clarke submits his affidavit; the affirmed reports of Louis C. Rose, M.D., and Thomas Kolb, M.D.; certified medical records from Throggs Neck Physical Therapy; and uncertified medical records.

On March 2, 2016, Dr. Kolb reviewed the Plaintiff's MRI of the cervical spine which revealed no fractures; posterior disc herniations at C4-5, C5-6, and C6-7; herniations at CS-6 and C6-7 with impingement; and "disc bulge versus small herniation at C2-3." On February 10, 2016, Dr. Kolb's review revealed evidence of a tear/retear of the anterior labrum; and evidence of low-grade partial tears of supraspinatus and infraspinatus tendons. Dr. Kolb's review of the Plaintiff's 2016 MRI of the right shoulder was compared with a prior examination on January 7, 2015, which revealed a tear of the anterior labrum extending superiorly and inferiorly; and a partial rotator cuff tear at the distal insertion of the supraspinatus tendon.

Dr. Rose began treating the Plaintiff on January 11, 2016. Dr. Rose's initial exam of Plaintiff's cervical spine, lumbar spine, and right shoulder revealed decreased range of motion. Dr. Rose prescribed physical therapy; Naprosyn for pain; and advised Plaintiff to refrain from pushing, pulling, or lifting which may aggravate his injuries. Dr. Rose treated the Plaintiff for 12 months.

Dr. Rose reviewed the Plaintiff's MRI reports dated January 7, 2015; February 10, 2016; and March 2, 2016. Dr. Rose examined the Plaintiff on March 28, 2016, finding continued range of motion deficits and restrictions of Plaintiff's cervical spine, lumbar spine, and right shoulder. Dr. Rose's evaluation July 11, 2016, revealed range of motion deficits of the cervical spine, lumbar spine, right shoulder, right elbow, and right knee. Dr. Rose recommended right shoulder surgery as conservative treatment was unsuccessful. On August 29, 2016, October 10, 2016, and January 31, 2017, Dr. Rose evaluated the Plaintiff and found him to be 100% impaired and incapable of working.

On February 23, 2017, Dr. Rose performed arthroscopic surgery of the Plaintiff's right shoulder, wherein he found; "appreciable clicking on range of motion"; and partial tears of the glenoid labrum and rotator cuff. Dr. Rose states the Plaintiff returned for post-operative follow-up appointments on March 8, 2017, and June 7, 2017, and complained of residual pain which were consistent with his pre-operative symptoms. Dr. Rose recommended that the Plaintiff continue with physical therapy and avoid activities that exacerbated his symptoms. Dr. Rose determined that the Plaintiff remained 100% impaired and incapable of working.

Dr. Rose treated Plaintiff for a prior work-related accident that occurred on December 8, 2014. Dr. Rose treated the Plaintiff's right shoulder, right arm, and lower back. Dr. Rose examined the Plaintiff on March 31, 2015, and found that he had no impairments and was working full-time without limitations. On August 6, 2015, Dr. Rose performed arthroscopic surgery of the Plaintiff's right shoulder which revealed a partial tear of the rotator cuff with some tearing on the dorsal surface; and impingement at the surface of the clavicle. Dr. Rose states that the Plaintiff returned for post-operative follow-up appointments on August 12, 2015, and August 17, 2019, wherein the Plaintiff complained of moderate pain to his right shoulder. Dr. Rose states, at that time, Plaintiff was working full time with no restrictions.

Dr. Rose examined the Plaintiff's right shoulder on August 2, 2023. Dr. Rose reviewed Plaintiff's certified physical therapy records from Throgs Neck Physical Therapy; and Plaintiff's MRI reports going back to 2015. Dr. Rose opined that a partial tear and/or a repair of the labrum are permanent conditions and

2

[* 2]

a permanent injury. Dr. Rose opined that the Plaintiff has had persistent symptoms for approximately eight years since the accident and six years since the time of surgery and still has range of motion restrictions in his right shoulder. Dr. Rose determined that the Plaintiff's prognosis for any further improvement is poor. Dr. Rose noted that the Plaintiff continues to have abnormal physical examinations, as described above, including subjective complaints of pain which are verified by the objective findings on physical examinations and the MRI films. Dr. Rose determined that Plaintiff suffered a permanent injury to his right shoulder. Dr. Rose determined that, based on his examinations, the accident prevented the Plaintiff from substantially his usual and customary daily activities for at least 90 of the 180 days immediately following the accident.

Dr. Rose opined that the Plaintiff's right shoulder injuries and limitations are not degenerative and are the aggravation of a pre-existing condition. Dr. Rose states that the Plaintiff had previously sustained an injury to his right shoulder and had undergone surgery, but he had no impairment and was working full-time without any restrictions. Dr. Rose concluded that the Plaintiff's current shoulder injury is causally related to the accident on December 23, 2015.

Plaintiff's submissions are sufficient to raise an issue of fact as to whether he sustained a causally related serious injury under the "significant limitation" and "permanent consequential limitation" categories of injury to his cervical spine, lumbar spine, and right shoulder. Dr. Rose found continuing limitations in range of motion and objective indications of injury to Plaintiff's neck, right shoulder, and lower back. *see Encarnacion v Castillo*, 146 AD3d 600, 601 [1st Dept 2017].

Plaintiff also raised an issue of fact as to whether his right shoulder injuries were caused by the subject accident through submission of Dr. Rose's affirmation. Dr. Rose addressed Plaintiff's prior 2014 right shoulder injury and surgery, compared his prior MRI images, conducted subsequent examinations, and provided an objective basis supporting the opinion that the subject motor vehicle accident caused an exacerbations of Plaintiff's right shoulder injury which he concluded to be causally related to the subject accident. *Massillon v Regalado*, 176 AD3d 600, 601 [1st Dept 2019]. Plaintiff also presented evidence of objective, quantified range of motion limitations and continuing pain years after the accident, that his right shoulder injury constitutes a serious, permanent injury. *Lee Yuen v Arka Memory Cab Corp.* 80 AD3d 481 [1st Dept 2011]; *see also Toure v Avis Rent A Car Sys.,* 98 NY2d 345 [2002].

With respect to Plaintiff's cessation of treatment, Defendants' Counsel argues that the Plaintiff's claims should be dismissed as Dr. Rose fails to explain Plaintiff's six-and-a-half-year gap in treatment. As of his deposition on April 22, 2020, Plaintiff testified that he stopped all treatment for the subject accident in 2019. [Tr at 101].

"A gap in, or cessation of, treatment is not necessarily dispositive since the law does not require a record of needless treatment in order for a in order for a plaintiff's case to survive a summary judgment motion, a plaintiff must offer a reasonable explanation […] when the plaintiff has provided evidence in admissible form from his physician that a continuation of medical therapy would have only been 'palliative in nature,' a subsequent gap in treatment would not necessitate the granting of summary judgment to the defendant, since the cessation of treatment was adequately explained." *Pommels v Perez*, 4 NY3d 566 [2005]; *see also Vidal v Maldonado*, 2008 NY Slip Op 28523 [Sup Ct Bronx Cty 2008]. Dr. Rose examined the Plaintiff in August of 2023, wherein he opined on the permanency of the Plaintiff's right shoulder injury; and concluded that any further treatment of Plaintiff's right shoulder would be palliative in nature and would not increase the Plaintiff's healing or function. Therefore, Dr. Rose's report provides a reasonable explanation for Plaintiff's gap in treatment. *Pommels, supra.*

3

With respect to Plaintiff's claim under the "90/180-day" category of injury, Plaintiff testified that's that he couldn't return to work after reinjuring his shoulder in the 2015 accident. [Tr at 77]. Dr. Rose states that the Plaintiff was deemed 100% impaired on January 18, 2016, February 1, 2016, and February 26, 2016. Dr. Rose opined that the accident prevented the Plaintiff from performing his usual and customary activities for at least 90 of the 180 days. Therefore, Plaintiff was disabled for the minimum duration necessary to state a 90/180-day" injury claim. (*Tejada v LKQ Hunts Point Parts*, 166 AD3d 436, 437-438 [1st Dept 2018].

With respect to Plaintiff's claim of a "permanent loss of use," there is no evidence that Plaintiff suffered a "total loss of use" of any body part. Therefore, Plaintiff's claims under the "permanent loss of use" category are dismissed (*see Riollano v Leavey*, 173 AD3d 494 [1st Dept 2019], citing *Oberly v Bangs Ambulance*, 96 NY2d 295, 299 [2001]). Furthermore, there is no evidence that Plaintiff suffered an injury under the "fracture" and "significant disfigurement" categories, and these claims are dismissed.

Accordingly, it is hereby

**ORDERED** that Defendants' motions seeking partial summary judgment is **granted to the extent** that Plaintiff Daryl W. Clarke's claims under the "permanent loss of use", "fracture" and "significant disfigurement" categories of injury are dismissed, and the motion is otherwise denied; and it is further

**ORDERED** that the Clerk shall mark **motion seq. 2** as decided in all court records.

This constitutes the Decision and Order of this Court.

Dated: February 18, 2025

_____
Hon. Patsy Gouldborne, J.S.C.

---

1. CHECK ONE.......................................... □ CASE DISPOSED IN ITS ENTIRETY X CASE STILL ACTIVE

2. MOTION IS.......................................... x GRANTED □ DENIED □ GRANTED IN PART □ OTHER

3. CHECK IF APPROPRIATE..................... □ SETTLE ORDER □ SUBMIT ORDER □ SCHEDULE APPEARANCE

□ FIDUCIARY APPOINTMENT □ REFEREE APPOINTMENT

4

[* 4]