■ DAVID SCUDERA, Appellant, v RAHMAN MAHBUBUR et al., Respondents. [833 NYS2d 239]—

In an action to recover damages for personal injuries, the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Mahon, J.), entered July 8, 2005, which, upon a jury verdict finding that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) and upon the denial of his motion pursuant to CPLR 4404 to set aside the jury verdict as against the weight of the evidence, is in favor of the defendants and against him, dismissing the complaint.

Ordered that the judgment is reversed, on the law, the complaint is reinstated, the motion is granted, and a new trial is granted, with costs to abide the event.

To set aside a jury verdict as against the weight of the evidence, it must be concluded that the evidence so preponderated in favor of the movant that the verdict could not have been reached on any fair interpretation of the evidence (*see Harris v Marlow*, 18 AD3d 608, 610 [2005]; *Torres v Esaian*, 5 AD3d 670, 671 [2004]; *Nicastro v Park*, 113 AD2d 129, 134 [1985]).

At trial, the plaintiff's treating neurologist, Dr. Jill Bressler, testified, inter alia, that the plaintiff sustained a herniated disc at the L5-S1 level. The herniated disc was repeatedly documented by three magnetic resonance imaging (hereinafter MRI) studies taken over a period of more than four years. The defendant's examining neurologist, Dr. Ravi Tikoo, acknowledged the presence of the disc herniation, its exacerbation over time, and that it was a permanent condition. Similarly, Dr. Eric Minkin, a neuroradiologist who examined the MRI films at the defendants' request, acknowledged the existence of the herniated disc and testified that the disc material was "extending out

of its normal position . . . into the spinal canal" and "appeared to be contacting the nerve root."

According to Dr. Bressler, further objective evidence of the plaintiff's nerve damage as a result of compression on the nerve root included sensory loss, decreased ankle jerk and weakness, and a loss of muscle bulk, known as atrophy, of the left leg. Dr. Tikoo acknowledged that atrophy of the calf muscle was an indication of nerve damage emanating from damage to the L5-S1 disc, yet, inexplicably, he failed to measure the plaintiff's calf muscle. Although Dr. Tikoo testified that the MRI films did not "clearly show any nerve damage," he did not state that they did not show any nerve damage.

Dr. Bressler also testified that as a result of this injury, the plaintiff's range of motion in his lumbar spine was significantly limited in that his backwards extension tested at only two degrees as opposed to a normal extension (25 degrees) for someone of the plaintiff's age, the plaintiff's forward flexion measured at 45 degrees which was 50% less than a normal range of motion (90 degrees), and his lateral bending was limited to 10 degrees, also a significant limitation. Dr. Bressler further testified that these limitations persisted during the approximately 20 times she examined the plaintiff since 2001 through the most recent examination, which was two days before the trial. Thus, the plaintiff provided the requisite objective evidence of the extent or degree of limitation and its duration (*see Crespo v Kramer,* 295 AD2d 467, 468 [2002]; *Barbeito v Kesev Taxi,* 281 AD2d 379, 380 [2001]). Significantly, Dr. Tikoo failed to test the flexion and extension ranges of motion of the plaintiff's lumbar spine, and Dr. Minkin examined only the MRI films. Indeed, on cross-examination, Dr. Tikoo testified that he was not surprised by the findings made by Dr. Bressler as to the plaintiff's loss of range of motion, which he acknowledged could be characterized as significant.

Under these circumstances, the verdict in favor of the defendants could not have been reached on any fair interpretation of the evidence (*see Nicastro v Park, supra* at 134). Accordingly, the Supreme Court should have granted the plaintiff's motion.

The plaintiff's contention that the trial court's charge to the jury was improper and confusing is unpreserved for appellate review (*see generally Schlecter v Abbondadello,* 5 AD3d 582, 583 [2004]; *O'Loughlin v Butler,* 2 AD3d 605, 605-606 [2003]). Nevertheless, in light of our determination granting a new trial, we note that the trial court erred in instructing the jury, in part, as follows: "the fact that a person sustained a herniation does not

necessarily mean the person sustained a serious injury. A person may have sustained a herniation without sustaining a serious injury."

While the instruction given by the court is a correct statement of the law (*see e.g. Pommells v Perez,* 4 NY3d 566, 574 [2005]; *Toure v Avis Rent A Car Sys.,* 98 NY2d 345, 353 n 4 [2002]; *Meely v 4 G's Truck Renting Co., Inc.,* 16 AD3d 26, 30-31 [2005]), the court also should have instructed the jury that a herniation together with other objective clinical tests providing a quantitative and or qualitative assessment of the plaintiff's condition resulting from the accident may establish a serious injury (*see e.g. Pommells v Perez, supra* at 577; *Toure v Avis Rent A Car Sys., supra* at 350-351; *Iacovazzo v Ahmad,* 27 AD3d 421, 421-422 [2006]; *Shpakovskaya v Etienne,* 23 AD3d 368, 369 [2005]; *Clervoix v Edwards,* 10 AD3d 626, 627 [2004]; *Assael v Marth,* 300 AD2d 329, 329-330 [2002]). While neither instruction is required, the failure to instruct the latter tended to improperly focus the jury's attention on the former, i.e., that which is not a serious injury, as opposed to equally addressing that which may constitute a serious injury. Schmidt, J.P., Spolzino, Florio and Skelos, JJ., concur.