■ MICHAEL RUSSO, Individually and as Administrator of the Estate of BARBARA RUSSO, Deceased, Respondent, v JAY LEVAT, M.D., et al., Respondents. [41 NYS3d 230]—

In an action to recover damages for medical malpractice, the defendants Jay Levat and Westchester Medical Group, the defendants Edward Jarvis, Toko Morimoto, and Emergency Medical Associates, PLLC, and the defendant Westchester County Health Care Corporation separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Westchester County (Giacomo, J.), dated September 19, 2014, as granted the plaintiff's motion pursuant to CPLR 4404 (a) to set aside so much of a jury verdict as was in favor of each of them and against him on the issue of liability as contrary to the weight of the evidence and in the interest of justice and for a new trial.

Ordered that the order is reversed, on the facts, with one bill of costs payable to the defendants appearing separately and filing separate briefs, the plaintiff's motion pursuant to CPLR 4404 (a) to set aside the jury verdict in favor of the defendants and against him on the issue of liability and for a new trial is denied, the jury verdict is reinstated, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate judgment.

On January 6, 2010, 41-year-old Barbara Russo (hereinafter the decedent) arrived at Westchester Medical Center's Emergency Department complaining of upper chest tightness and a throbbing feeling in her throat. She was initially treated by the defendant Toko Morimoto, an emergency room physician, who performed a physical examination and took her medical history. Aside from a rash on her upper chest wall and face, the decedent's vital signs were normal and Morimoto ordered an EKG that also yielded normal results. Based upon the decedent's presentation, Morimoto administered treatment for an allergic reaction to doxycycline, a medication that had recently been prescribed to the decedent. When Morimoto's shift ended, the defendant Edward Jarvis, an emergency room physician, assumed care of the decedent and it appeared that the decedent's symptoms were improving with treatment. She was discharged later that night with instructions to follow up with her primary care doctor.

The following day, the decedent had an appointment with

the defendant Jay Levat, an internist. The decedent still had similar symptoms which Levat described as a squeezing feeling in the chest radiating up to the throat. After a physical examination revealed normal findings aside from some tenderness in the abdomen, Levat concluded that the decedent had esophagitis from the pills she had been taking. Specifically, esophagitis was a known side effect in patients taking doxycycline. Levat advised the decedent to take various antacids and over the counter medications.

According to the trial testimony of the decedent's stepdaughter, over the next several days, there were indications that the treatment for esophagitis helped to improve some of the symptoms. However, the decedent still felt ill with a headache, nausea, and some degree of chest discomfort. She returned to Levat's office on January 11, 2011, this time with body aches and a fever. Levat noted that the decedent's other symptoms had shown some improvement and the new symptoms were indicative of the late stages of a flu-like viral infection. The decedent was advised to rest and drink liquids. Later that evening, the decedent collapsed at her home and was taken to Westchester Medical Center where she was later pronounced dead. A subsequent autopsy revealed the cause of death to be an aortic dissection, a rare cardiovascular event that is often identified by a sharp and severe ripping pain that radiates from the front of the chest to the back, putting the patient in severe distress. The decedent's husband thereafter commenced this medical malpractice action against the defendants alleging, inter alia, that they departed from acceptable medical practice by failing to consider and investigate a cardiovascular cause for the decedent's symptoms.

At trial, both the plaintiff and counsel for Morimoto indicated that Morimoto would be called as a witness. By the close of evidence, however, neither party had done so and instead relied on certain portions of her deposition testimony. At the pre-charge conference prior to summations, the plaintiff requested a missing witness charge for Morimoto, which the trial court denied as untimely. The jury returned a unanimous verdict in favor of the defendants and against the plaintiff on the issue of liability, and the plaintiff's oral motion to set aside the verdict was denied.

The plaintiff filed a written motion pursuant to CPLR 4404 to set aside the verdict as contrary to the weight of the evidence and in the interest of justice and for a new trial. The Supreme Court granted the plaintiff's motion in its entirety, finding, inter alia, that parts of the verdict were against the weight of

the evidence and that it had erred by denying the plaintiff's request for a missing witness charge. A new trial was granted against all of the defendants. The defendants appeal.

Pursuant to CPLR 4404 (a), a court "may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence, [or] in the interest of justice" (see *Morency v Horizon Transp. Servs., Inc.*, 139 AD3d 1021, 1022-1023 [2016]; *Lariviere v New York City Tr. Auth.*, 131 AD3d 1130, 1132 [2015]). A motion pursuant to CPLR 4404 (a) to set aside a verdict and for a new trial in the interest of justice encompasses errors in the trial court's rulings on the admissibility of evidence, mistakes in the charge, misconduct, newly discovered evidence, and surprise (see *Morency v Horizon Transp. Servs., Inc.*, 139 AD3d at 1023; *Allen v Uh*, 82 AD3d 1025, 1025 [2011]; *Matter of De Lano*, 34 AD2d 1031, 1032 [1970], *affd* 28 NY2d 587 [1971]; *see also Rodriguez v City of New York*, 67 AD3d 884, 885 [2009]). The trial court must decide whether substantial justice has been done, and must look to common sense, experience, and sense of fairness in arriving at a decision (see *Micallef v Miehle Co., Div. of Miehle-Goss Dexter*, 39 NY2d 376, 381 [1976]; *Allen v Uh*, 82 AD3d at 1025).

Here, the Supreme Court erred in granting that branch of the plaintiff's motion which was pursuant to CPLR 4404 (a) to set aside the verdict in the interest of justice and for a new trial as to the causes of action against Morimoto. The court's original denial of the plaintiff's request for a missing witness charge as untimely was not error since it was made after the close of all the evidence (see *Mereau v Prentice*, 139 AD3d 1209 [2016]; *Bailey v Brookdale Univ. Hosp. & Med. Ctr.*, 98 AD3d 545, 546 [2012]; *Buttice v Dyer*, 1 AD3d 552, 553 [2003]).

Furthermore, the verdict as to the other defendants was not contrary to the weight of the evidence. A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence (see *Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *Yanyak v Rosenman*, 134 AD3d 817, 819 [2015]; *Semo v McMahon*, 128 AD3d 1048 [2015]; *Valenzuela v Wyckoff Hgts. Med. Ctr.*, 116 AD3d 1037 [2014]; *DiMarco v Custom C.A.S., Inc.*, 106 AD3d 684, 685 [2013]; *Nicastro v Park*, 113 AD2d 129, 134 [1985]). It is for the jury to make determinations as to the credibility of the witnesses, and great deference in this regard is accorded to the jury, which had the

opportunity to see and hear the witnesses (*see Yanyak v Rosenman*, 134 AD3d at 819; *Semo v McMahon*, 128 AD3d at 1049; *Valenzuela v Wyckoff Hgts. Med. Ctr.*, 116 AD3d at 1038; *Babajanov v Yun Sang Ma*, 77 AD3d 862 [2010]). Where, as here, conflicting expert testimony is presented, "the jury is entitled to accept one expert's opinion and reject that of another expert" (*Hatzis v Buchbinder*, 112 AD3d 890, 891 [2013] [internal quotation marks omitted]; *see Bailey v Brookdale Univ. Hosp. & Med. Ctr.*, 98 AD3d 545 [2012]; *Ferreira v Wyckoff Hgts. Med. Ctr.*, 81 AD3d 587, 588 [2011]).

Here, the disputed testimony of the parties and their medical experts presented issues of credibility which were for the jury to resolve (*see Yanyak v Rosenman*, 134 AD3d at 817; *Semo v McMahon*, 128 AD3d at 1049; *Valenzuela v Wyckoff Hgts. Med. Ctr.*, 116 AD3d at 1039). In particular, the testimony of the defendants' expert and the defendants themselves provided the jurors with a reasonable basis for drawing a conclusion contrary to that reached by the plaintiff's expert regarding whether the defendants departed from good and accepted medical practice by not further investigating a cardiovascular cause for the decedent's symptoms. Contrary to the Supreme Court's determination, the jury could have reasonably concluded, based upon a fair interpretation of the evidence, that the defendants considered a cardiovascular cause within the context of the decedent's presentation and appropriately determined that such a cause was unlikely in light of the test results, physical examinations, history, lack of risk factors, and the constellation of other symptoms. Accordingly, the jury verdict in favor of the defendants was supported by a fair interpretation of the evidence and must be reinstated.

In light of our determination, we need not reach the defendants' remaining contention. Dillon, J.P., Miller, Duffy and LaSalle, JJ., concur.