Monzon v Porter (2019 NY Slip Op 04855)





Monzon v Porter


2019 NY Slip Op 04855


Decided on June 14, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 14, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, DEJOSEPH, NEMOYER, AND CURRAN, JJ.


1325 CA 18-01090

[*1]MARGARET L. MONZON, PLAINTIFF-APPELLANT,
v
JOHN A. PORTER, M.D., DEFENDANT-RESPONDENT, ET AL., DEFENDANT. 






CHERUNDOLO LAW FIRM, SYRACUSE (JOHN C. CHERUNDOLO OF COUNSEL), AND COZEN O'CONNOR, PHILADELPHIA, PENNSYLVANIA, FOR PLAINTIFF-APPELLANT. 
WARD GREENBERG HELLER & REIDY LLP, ROCHESTER (DANIEL P. PURCELL OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Ontario County (Frederick G. Reed, A.J.), entered October 27, 2017. The judgment dismissed the complaint upon a jury verdict of no cause of action. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs, the motion is granted in part, the verdict is set aside, the complaint against defendant John A. Porter, M.D. is reinstated, and a new trial is granted.
Memorandum: Plaintiff commenced this medical malpractice action seeking damages for injuries based on, inter alia, allegations that John A. Porter, M.D. (defendant) departed from accepted standards of medical care by failing to adequately inspect her bowel during aortobifemoral bypass surgery. Specifically, plaintiff alleged that defendant's failure to perform an adequate inspection resulted in a failure to discover a perforation in plaintiff's bowel, which caused her to develop peritonitis, subsequently lapse into a coma for two months, and suffer multiorgan, gastrointestinal and respiratory failures. Following a trial, the jury returned a verdict in favor of defendant, finding, inter alia, that defendant did not depart from the accepted standard of medical care during the surgery. Supreme Court subsequently denied plaintiff's posttrial motion for a judgment notwithstanding the verdict, and to set aside the verdict as against the weight of the evidence. Plaintiff now appeals from a judgment entered on the jury verdict.
We agree with plaintiff that the jury verdict is against the weight of the evidence. "It is well settled that a jury verdict will be set aside as against the weight of the evidence only when the evidence at trial so preponderated in favor of the movant that the verdict could not have been reached on any fair interpretation of the evidence" (Capierseo v Tomaino, 160 AD3d 1346, 1348 [4th Dept 2018]; see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]). Here, the verdict sheet asked the jury to answer the following relevant question: "Did [defendant] depart from accepted standards of medical care by not conducting a focused inspection of the entire bowel during the April 17, 2013 aortobifemoral bypass surgery?" Phrasing the question in this manner, at the parties' agreement, the court instructed the jury that the alleged departure from the standard of care should be measured based on whether a "focused inspection" of the bowel was required. We conclude that the jury's verdict with respect to whether defendant was required to perform a "focused inspection" of plaintiff's bowel could not have been reached on any fair interpretation of the evidence.
Initially, we note that defendant, his expert witness, and plaintiff's expert witness did not define "focused inspection" in their trial testimony, and did not opine whether the absence of a "focused inspection" constituted a deviation from the standard of care. We reject defendant's contention that "focused inspection" is equivalent to "running the bowel" — a medical term that was the source of much testimony at trial. The term "running the bowel" was described in nearly [*2]identical fashion by defendant and the expert witnesses as an "extremely thorough mechanism" requiring a surgeon to run his or her hands over the bowel, segment-to-segment, looking and flipping it back and forth, examining every aspect of it. Thus, inasmuch as the trial testimony established that "running the bowel" is a term of art with a precise definition, we conclude that the court and the parties must have meant something else by choosing to use the term "focused inspection" on the verdict sheet. If the court and the parties wanted "running the bowel" to be the applicable standard of care they would have agreed to use that very term. Instead, the record establishes that the court and parties compromised on the words "focused inspection" only after the court rejected defendant's request to use "running the bowel" as the applicable standard. After hearing nearly uniform testimony from defendant and the parties' experts about the "running the bowel" procedure, the jury could not have reasonably concluded, based on a fair interpretation of the evidence, that "focused inspection" also meant "running the bowel."
Moreover, the record establishes that the experts disagreed only on whether the applicable standard of care required defendant to run the bowel. Specifically, plaintiff's expert believed that it did, while defendant's expert believed that it did not. Defendant and the surgeon who assisted in the procedure testified that "running the bowel" was not required during aortobifemoral bypass surgery. Contrary to defendant's contentions, however, this disagreement is irrelevant to resolve this appeal, inasmuch as the standard of care and a deviation therefrom were not expressed as "running the bowel" and, thus, this case does not present a prototypical battle of the experts (cf. Capierseo, 160 AD3d at 1348).
Here, the evidence greatly preponderates in plaintiff's favor. Defendant's own expert testified that the standard of care required defendant to "inspect the bowel" after aortobifemoral bypass surgery by "looking at [it] . . . to see if it was bruised or injured in any way by the retractors" (emphasis added). The expert clarified that the doctors in the operating room must look at each segment of the bowel as it is returned to the abdomen: "[W]hen you bring the bowel back in, you see the side towards you, the person on the other side of the table sees the other side, you definitely see the top . . . so you're looking at one side, you're looking at the top, and then the assistant is looking at the other side . . . so you really are seeing the bowel as you're bringing each layer — each segment of the bowel back in" (emphasis added).
Thus, although defendant's expert repeatedly emphasized that the standard of care required looking at the bowel, she clarified that defendant and the assisting surgeon were, collectively, required to have a visual on the entire bowel, looking at "each segment of [it]" carefully as it was being sequentially brought back into plaintiff's abdomen. To be sure, plaintiff's expert testified that the standard of care required more, i.e., "running the bowel," but, at a minimum, both parties' experts testified that the standard of care required at least a careful visualization of the entire bowel, segment by segment. In our view, that is the only reasonable definition of "focused inspection," considering that the only other standard of care described in the trial testimony was "running the bowel," which as already noted, cannot also be the definition of "focused inspection."
The weight of the evidence greatly preponderates in favor of plaintiff due, in no small part, to defendant's testimony that he not only failed to perform a "focused inspection" of the bowel, but that "[he could not] not observe it" as he returned it into plaintiff's abdomen. In not "observing" the bowel, defendant plainly could not have conducted a careful visualization of the body part as it was returned to plaintiff's body; therefore he was plainly not performing a "focused inspection." Defendant also admitted that "[he] didn't specifically look for [bruising]" of the bowel, which his own expert testified is required when inspecting the bowel during an aortobifemoral bypass surgery.
Defendant also testified that he only looked at the bowel's top side. Although his expert did not testify that defendant was personally required to view the other side, she did explain that the other surgeon in the operating room must view that side so that both surgeons, collectively, can view the entire bowel. Defendant did not testify that he ensured that the assisting surgeon carefully viewed the back side of the bowel, segment by segment. Moreover, the assisting surgeon did not testify that defendant instructed her to do so. Inasmuch as defendant's conduct does not meet the standard articulated by the expert witnesses, we conclude that the evidence so preponderates in plaintiff's favor that the court erred in denying her motion to set aside the verdict (see Grant-White v Hornbarger, 12 AD3d 1066, 1067-1068 [4th Dept 2004]; see [*3]generally CPLR 4404 [a]; Lolik, 86 NY2d at 746), despite the opinion of defendant's expert that defendant did not deviate from the applicable standard of care. " Where opinion testimony is contradicted by the facts, the facts must prevail' " (Grant-White, 12 AD3d at 1067).
In reaching this conclusion, we are mindful that the verdict sheet essentially asked the jury to determine whether defendant deviated from a standard of care that was not the subject of any expert opinion testimony. As noted above, neither the experts nor defendant specifically testified whether a "focused inspection" was within the standard of care, or whether the failure to conduct a "focused inspection" deviated from the standard of care. That the jury was given a verdict sheet containing a standard of care that was not based on any evidence at trial, further supports our conclusion that the verdict is against the weight of the evidence and that a new trial is required (see generally Killon v Parrotta, 28 NY3d 101, 108 [2016]; Davis v Caldwell, 54 NY2d 176, 179-180 [1981]). For similar reasons, we also are unable to grant judgment as a matter of law on liability to plaintiff because we may not deprive the parties of their right to have a jury decide the liability issues based on evidence sufficient to support the particular alleged deviation or deviations from the standard of care (see Killon, 28 NY3d at 108; Ray v Stockton [appeal No. 2], 162 AD3d 1677, 1681-1682 [4th Dept 2018], lv dismissed 32 NY3d 1143 [2019]).
All concur except Smith, J.P., and Lindley, J., who dissent and vote to affirm in the following memorandum: We respectfully dissent because we disagree with the majority's conclusion that the verdict is contrary to the weight of the evidence. Therefore, we would affirm the judgment.
Plaintiff commenced this medical malpractice action alleging that she sustained personal injuries as the result of, inter alia, the negligence of John A. Porter, M.D. (defendant) during and after abdominal surgery. At trial, plaintiff's expert testified that defendant failed to adhere to accepted medical standards because "good accepted practice requires surgeons to look at the bowel and inspect it to make sure it hasn't been injured . . . , and the way surgeons inspect [the] bowel is you go back to the duodenum, which is right below the stomach, pick up the bowel . . . and just like running your hands over a hose, you go segment-to-segment, you look, you look and you go down the length of the bowel." That expert further opined that "it was a departure from good and accepted practice for [defendant] not to inspect the bowel . . . before closing the patient."
Defendant, conversely, testified that the "process of inspecting, very carefully and minutely, the entire length of the bowel, the entire 20, 25 feet of it," was indicated only when the surgeon suspected a tumor or had removed adhesions, neither of which applied in this case. Defendant testified that he did not do "a focused inspection" of the bowel, i.e., he did not "do[] a minute inspection of the whole thing," which he equated with running the bowel, because "[i]t's a needless, pointless exercise . . . [b]ecause we can see the bowel when we're putting it back in the abdomen. The risk of anything happening to it is so small that there's no justification for extending the anesthesia time to do something like that." The surgeon who assisted in the surgery also testified that she and defendant did not run plaintiff's bowel in this case because the standard of care did not require it after this type of surgery, and that running the bowel carried its own risk of injury to the patient's bowel. In addition, both defendant and his expert witness testified that bowel perforation was not an associated risk from this type of surgery. Defendant's expert further testified that the standard of care did not require that a surgeon run the patient's bowel or flip it over and look at the bottom of it, rather, all that is required is that the surgeon "look at the bowel and inspect it to see if it was bruised or injured in any way by the retractors." She further testified that running a patient's bowel carries risks of its own, including bowel ileus, complications from prolonged time under anesthesia, and the risk of causing perforations by handling the bowel. Defendant's expert opined that defendant's actions in this case comported with the standard of care.
The court, with the approval of plaintiff and defendant, provided the jury with a verdict sheet, in which the first question was, did defendant "depart from accepted standards of medical care by not conducting a focused inspection of the entire bowel during the" surgery at issue. The jury unanimously answered that question in the negative, and the court entered judgment in favor of defendant.
The majority now concludes that the jury verdict on that issue is contrary to the weight of the evidence. The standard for determining whether a verdict is contrary to the weight of the evidence, and reviewing it on appeal, is whether "the evidence so preponderate[d] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence" (Lolik v Big v Supermarkets, 86 NY2d 744, 746 [1995] [internal quotation marks omitted]). Applying that principle here, we conclude that there is a fair interpretation of the evidence pursuant to which the jury could have found that defendant's inspection of plaintiff's bowel was sufficient to comport with the standard of care. Indeed, this "trial was a prototypical battle of the experts, and the jury's acceptance of defendant['s] case was a rational and fair interpretation of the evidence" (Lillis v D'Souza, 174 AD2d 976, 977 [4th Dept 1991], lv denied 78 NY2d 858 [1991]; see Holstein v Community Gen. Hosp. of Greater Syracuse, 86 AD3d 911, 912 [4th Dept 2011], affd 20 NY3d 892 [2012]; Capierseo v Tomaino, 160 AD3d 1346, 1348 [4th Dept 2018]).
We disagree with the majority's conclusion that reversal is required because defendant used the words "I did not do a focused inspection" of the bowel. Defendant used those words in testifying that he did not do a minute inspection of each section of plaintiff's entire bowel, but defendant, the assisting surgeon, and defendant's expert all testified that such an inspection was not required. Furthermore, plaintiff's expert did not use those words in describing the standard of care, and plaintiff's bill of particulars included the allegation that defendant was negligent because he, inter alia, "failed to properly inspect . . . plaintiff's surgical site during and after performing the surgery." Nevertheless, after the court indicated that it would use the words "focused inspection" in the verdict sheet, plaintiff's counsel repeated at least eight times in summation that the jury should find for plaintiff because defendant admitted that he "didn't do a focused inspection." The jury rejected plaintiff's contentions, and despite counsel's focused attack on defendant's language, it is well settled that "[w]here, as here, conflicting expert testimony is presented, the jury is entitled to accept one expert's opinion and reject that of another expert' " (Russo v Levat, 143 AD3d 966, 969 [2d Dept 2016]; see Clark v Loftus, 162 AD3d 1643, 1644 [4th Dept 2018]; Sisson v Alexander, 57 AD3d 1483, 1484 [4th Dept 2008], lv denied 12 NY3d 709 [2008]). The jury did so here, and therefore the judgment should be affirmed.
Finally, for the reasons discussed above, we further conclude that the court properly denied that part of plaintiff's motion pursuant to CPLR 4404 (a) seeking a judgment notwithstanding the verdict (see generally Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]).
Entered: June 14, 2019
Mark W. Bennett
Clerk of the Court