Gomez v New York City Tr. Auth. (2025 NY Slip Op 51466(U))

[*1]

Gomez v New York City Tr. Auth.

2025 NY Slip Op 51466(U)

Decided on September 16, 2025

Supreme Court, New York County

Moyne, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 16, 2025
Supreme Court, New York County

Melodie Gomez, Plaintiff,

against
New York City Transit Authority, MTA BUS COMPANY, 
 THE CITY OF NEW YORK, JUAN C DELARASE, Defendant.

Index No. 450035/2017

For the Plaintiff, Melodie Gomez:
Neal Bass, Esq.
Associated with Hecht, Kleeger & Damashek
For the Defendants (New York City Transit Authority, MTA Bus Company, The City of New York, and Juan C. Delarase a/k/a Juan C. Delarosa):
Moya O'Connor, Esq.
A member of Barry, McTiernan & Moore
David L. Wysnewski, Esq.
of counsel to Barry, McTiernan & Moore

Nicholas W. Moyne, J.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 161, 162, 163, 164, 165, 166, 167, 168, 178, 187, 188, 189, 190, 191, 192, 193, 194, 195 were read on this motion to/for SET ASIDE VERDICT.
The following e-filed documents, listed by NYSCEF document number (Motion 007) 169, 170, 171, 172, 173, 174, 175, 176, 177, 179, 180, 181, 182, 183, 184, 185, 186, 196 were read on this motion to/for SET ASIDE VERDICT.
Upon the foregoing documents, it is
The plaintiff, Melodie Gomez, by her attorney Neal Bass, Esq., moves this Court for an Order (1) pursuant to CPLR §4404 granting additur for past and future pain and suffering; and (2) pursuant to CPLR §4401 and §4404 setting aside the jury verdict finding that the plaintiff did not suffer either a permanent consequential limitation of use of a body organ or member or a significant limitation of use of a body function or system, as defined in the categories provided under Insurance Law §5102(d), and directing a verdict in favor of the plaintiff as to the said categories, or alternatively, granting a new trial as to those categories.
The defendants, New York City Transit Authority, MTA Bus Company, The City of New York, and Juan C. Delarase a/k/a Juan C. Delarosa, by their attorneys Barry, McTiernan & Moore, move this Court for an Order pursuant to CPLR §4404 (1) setting aside the verdict or granting defendants a new trial; and (2) for any such other and further relief as this Court may deem just and proper.
This action arises from personal injuries sustained by the plaintiff on June 30, 2015, when she was seated in a parked car struck by the defendants' bus. Summary judgment on liability was previously granted in favor of the plaintiff on January 20, 2021. The case proceeded to a jury trial before this Court on damages from July 22, 2024, to August 5, 2024.
Jury Verdict Summary
The jury was charged on three categories of serious injury under Insurance Law §5102(d). The jury found:
Question One: "Did the plaintiff Melodie Gomez sustain a permanent consequential limitation of use of a body organ or member as a result of the accident of June 30, 2015?" The jury responded "No".
Question Two: "Did the plaintiff Melodie Gomez sustain a significant limitation of use of a body function or system as a result of the accident of June 30, 2015?" The jury responded "No".
Question Three: "Did the plaintiff Melodie Gomez sustain a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence?" The jury responded "Yes".
The jury awarded the plaintiff $150,000 for past pain and suffering from the date of the accident to the present, and $150,000 for future pain and suffering and loss of enjoyment of life over a period of 46 years, in accordance with life expectancy tables. The jury also awarded $400,000 for future medical expenses to be incurred over a period of 46 years.
Defendants' Motion to Set Aside the Verdict and for a New Trial
The defendants contend that the verdict should be set aside or a new trial granted on several grounds: (1) the jury should not have been charged with the 90/180-day category because it was not pleaded and lacked medical testimony for the relevant period; (2) the Court erred in not permitting missing witness charges; and (3) the Court erred in precluding the defendants' surveillance video from being shown to the jury. These arguments are unpersuasive.
First, as to the 90/180-day category, the plaintiff's complaint expressly alleges "serious injuries as defined in Section 5102(d) of the Insurance Law of the State of New York," thereby [*2]pleading all categories. That the bill of particulars did not limit the categories of serious injuries plead in the complaint to any specific categories does not detract from the fact that all categories of serious injuries were expressly preserved by the complaint.Moreover, the Court charged three categories of serious injury, and defense counsel only objected to the 90/180 category, despite the fact the other two categories were also not plead in the bill of particulars, thus rendering their argument inconsistent. Defendants also never objected to the bill of particulars until trial, despite it not having identified specific categories of injuries pursuant to Insurance Law §5102(d), and therefore waived any objection to the sufficiency of the bill of particulars (see Dupree v Giugliano, 87 AD3d 975 [2nd Dept. 2011] affirmed in part and modified on other grounds 20 NY3d 921 [2012]; Martin v We're Associates, Inc., 127 AD2d 568 [2nd Dept 1987]). Furthermore, the plaintiff moved at trial, pursuant to CPLR §3025(c), to amend the pleadings to conform to the evidence and assert the 90/180 category, which this Court granted. Leave to amend pleadings should be freely granted absent prejudice or surprise, and increased liability exposure alone does not constitute prejudice (see Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411 [2014]). The defendants failed to establish any prejudice by this amendment (see Dray v Staten Island University Hospital, 227 AD3d 664, 666 [2nd Dept. 2024]). 
The plaintiff also presented ample medical evidence and testimony supporting the 90/180-day category, including emergency room records detailing initial complaints and follow-up visits showing continued pain and treatment, medical records documenting significant restrictions of movement and limitations in daily activities, and her own testimony regarding her inability to cook, clean, exercise, attend college, or adequately care for her newborn during the relevant period. Dr. Vadim Lerman, a board-certified spinal surgeon, and Dr. Seth Schran, a physical medicine and rehabilitation specialist, both testified, without objection, that the plaintiff sustained a 90/180 disability. The jury's finding on this category was amply supported by the evidence.
Second, regarding the missing witness charges, the defendants' request for a missing witness charge concerning Dr. Denny Rodriguez was untimely, as it was made after the plaintiff had rested. As for Dr. Bernard P. Chang and Dr. Meral Duran, the defendants failed to formally request missing witness charges at the charge conference, thus waiving them (see Russo v Levat, 143 AD3d 966, 968 [2d Dept 2016]; Rivera v Port Authority of NY and N.J., 127 AD3d 415, 416 [1st Dept 2015]). Moreover, the testimony of these witnesses, as well as plaintiff's rebuttal witness Dr. Brendan P. Bourdage, would have been cumulative, which is a proper basis for denying such a charge (see Rivera, 127 AD3d at 416; Jellema v 66 W.84th St. Owners Corp., 248 AD2d 117 [1st Dept 1998]). 
Third, the preclusion of the surveillance video was proper. It is true, as the defendants argue, that the CPLR does not set forth a specific deadline for the disclosure of video surveillance. That does not mean that this Court cannot, in an exercise of its discretion as the trial court, deem a late disclosure of surveillance video to be prejudicial to the plaintiff and preclude it on those grounds (see Pizzo v Lustig, 216 AD3d 38, 48-49 [2d Dept 2023]). Trial courts may regulate the timing of disclosure of surveillance videos through their preliminary and compliance conference orders as well as exercising their discretion as the Trial Judge to ensure a fair and orderly trial (see id. at 48-49). In this case, the plaintiff served a demand for surveillance films on November 14, 2017. The preliminary conference order directed compliance within 45 days. The Note of Issue was filed on February 28, 2022. The defendants exchanged the video on July 22, 2024, after jury selection had commenced and nearly seven [*3]years after the initial demand. The defendants claim that the videos were taken on July 8. 9 and July 19, 2024, just 10 days prior to the commencement of jury selection. 
The defendants failed to provide any valid excuse for their belated production. Defendants failed to even proffer any excuse why it waited until the eve of trial to take surveillance videos and waited again to exchange them until after jury selection had commenced. In the opinion of this Court, such a late exchange amounts to a trial by ambush and severely prejudiced the plaintiff's ability to properly and meaningfully voir dire the proposed jurors , prepare for trial including reviewing the videos, depose the videographer if desired, and investigate the authenticity of the videos. Contrary to the arguments put forth by the defendants, this is not a novel holding that is unsupported by prior caselaw. The Court of Appeals has previously held that denying plaintiffs pretrial access to surveillance videos creates undue hardships because only by observing the conditions as they appear on film can the plaintiffs respond to possible distortions or adequately explain to the jury any seeming inconsistencies between the plaintiff's claims of injury and the plaintiff's activities as depicted on the surveillance videos (see Tai Tran v New Rochelle Hosp. Med. Ctr., 99 NY2d 383, 387 [2003]; DiMichel v South Buffalo Ry. Corp., 80 NY2d 184, 197 [1992]). This holding was further strengthened by the subsequent passage of CPLR § 3101(i) which mandates that all surveillance tapes are subject to full disclosure. 
Defendants' reliance on Zambrano v Fabregs, 2021 NY Slip Op. 30937[U], (NY Sup.Ct. 2021), is totally misplaced since in Zambrano the 3101(I) exchange was made "shortly after counsel were informed that this action would be placed on the trial calendar." (Id. at *1) After the plaintiff filed the note of issue he moved to depose the videographer. The court held that since the note of issue was filed after the 3101(I) exchange and there were no unusual or unanticipated circumstances, the plaintiff waived the right to depose the videographer. Unlike in this case, the plaintiff in Zambrano failed to allege how he was prejudiced by the late disclosure of the surveillance video (Id. at *2). Defendants' notion that in this case the plaintiff can cure any prejudice simply by cross-examining the videographer at trial is unavailing, as that proposed solution does nothing to cure the prejudice in not allowing the plaintiff to adequately prepare for trial and/or question the potential jurors about their views regarding video surveillance of an injured plaintiff. It is not in keeping with the Court of Appeals mandates regarding the right of plaintiffs to have full disclosure of all surveillance tapes prior to the commencement of trial. Accordingly, this Court correctly precluded the defendants' inexplicably belated surveillance videos. 
Fourth, the defendants claim the weight of the evidence did not support an award of future damages, despite the jury's finding of a 90/180-day serious injury. It is well-settled that a plaintiff is entitled to recover damages for future pain and suffering once a serious injury has been established, even if only under the 90/180-day category (see Obduilo v Fabian, 33 AD3d 418, 419 [1st Dept 2006]). The plaintiff, Ms. Gomez, testified that she has experienced constant pain in her back and neck since the accident. This testimony was supported by Dr. Schran and Dr. Lerman, who examined her shortly before trial and testified that her injuries were permanent, causing significant restrictions of movement in her lower back (50 percent) and neck (30 percent), and that she would require future medical care and treatment. The jury's award of future damages was consistent with the plaintiff's ongoing pain and the medical evidence presented.
Therefore, the defendants' motion to set aside the verdict or grant a new trial is denied in [*4]its entirety.
Plaintiff's Motion for Directed Verdict on Permanency and Additur
The plaintiff seeks to set aside the jury's "No" findings for the "permanent consequential limitation of use of a body organ or member" and "significant limitation of use of a body function or system" categories and requests a directed verdict on these categories, or, alternatively, a new trial on them. The plaintiff also seeks additur for past and future pain and suffering.
Directed Verdict on Permanency
Pursuant to CPLR 4404(a), a court may set aside a verdict and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence. To sustain a determination that a jury verdict is not supported by sufficient evidence as a matter of law, there must be no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial." (Buckham v 322 Equity, LLC, 229 AD3d 669 [2nd Dept 2024][Internal quotation marks omitted]; See also Scudera v Mahbubur,39 AD3d 620 [2nd Dept. 2007] [jury verdict finding no serious injury must be set aside where it "could not have been reached on any fair interpretation of the evidence."]).
The jury's verdict finding no "permanent consequential limitation" or "significant limitation" is contrary to the weight of the credible evidence and there is no valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury. In the first instance, the verdict is clearly grossly inconsistent as both sides essentially conceded during oral argument. The jury found that the plaintiff sustained a 90/180-day serious injury and, more critically, also awarded the plaintiff $400,000 for future medical expenses and $150,000 for future pain and suffering, specifically for a period of 46 years, covering the entire remainder of her life expectancy. This award of lifetime future damages is grossly inconsistent with the finding of no permanent injury.
Where a jury awards future damages for a plaintiff's entire life expectancy, they should have also found permanency. The jury cannot logically award damages for lifetime care and suffering while simultaneously denying that the injuries causing such needs are permanent. This identical issue was addressed in Lee v XXX, 78 Misc 3d 1236[A] [Sup. Ct. Dutchess County 2023], where the jury determined that the plaintiff had satisfied the 90/180 days and significant limitation categories but not the permanent consequential limitation category of the Insurance Law. The jury awarded the plaintiff $20,000 for future pain and suffering and $50,000 for future medical expenses for 30 years - the duration of plaintiff's life expectancy. Plaintiff moved pursuant to CPLR §4404 to set aside the damages verdict for, inter alia, not being based on a fair interpretation of the evidence. The court granted plaintiff's motion based on, in part, the inherent inconsistency in the jury awarding damages for future pain and suffering and medical expenses for the rest of plaintiff's life expectancy, while at the same time finding that the injuries were not permanent. (Id. at *4). Since the jury found future damages for 30 years, they logically should have found permanency since the plaintiff's life expectancy was 30 years (Id.). Similarly, in this case, since the jury awarded the plaintiff future damages over a period of 46 years, then they should have found permanence, since that is her life expectancy. 
Accordingly, the plaintiff is entitled to a directed verdict finding that she had sustained a permanent injury and, further, the amount for past and future pain and suffering should be [*5]increased as set forth below.
The jury implicitly credited the plaintiff's medical experts on the causal relationship between the accident and her injuries by awarding future damages for 46 years. The plaintiff's experts provided uncontradicted testimony regarding the permanence of her injuries. Spinal surgeon Dr. Vadim Lerman testified that the plaintiff suffered a severe disc herniation at L4-5 with significant nerve compression and an annular tear, a disc herniation at L3-4, and a herniation at C4-5 pressing on the cervical cord. He performed a laminectomy with fusion at L4-5 due to the severity of the injury and the failure of conservative treatment. Dr. Lerman unequivocally stated that the fusion he performed permanently limits the range of motion in that part of the spine because it is "locked out." He further testified that her injuries are "consequential and permanent - you cannot undo the fusion." He opined she has a 40-50% limitation of her lumbar spine and 30% of her cervical spine. 
Radiologist Dr. Michael Green testified that the MRI films showed disc herniations at L4-5 (moderate to severe, 75% canal compression) and L3-4, and C4-5, with no indication of degenerative disease, particularly in a 24-year-old, and signs of an acute injury. Physical Medicine and Rehabilitation specialist Dr. Seth Schran confirmed disc herniations at L4-5 (annular tear with herniation), L3-4, and C4-5, with no evidence of degeneration. He identified muscle spasms, radiculopathy, and significant, objectively quantified restrictions of motion in both lumbar and cervical spines, which persisted and even regressed shortly before trial. Dr. Schran also opined that her injuries are permanent and cause significant limitations. 
The jury clearly rejected the defense experts' opinions that the plaintiff's disc herniations were degenerative and unrelated to the accident, and that she sustained no disability. Most compellingly, the defendants' own expert orthopedic surgeon, Dr. Andrew Bazos, conceded on cross-examination that a fusion of the vertebrae "permanently limits the range of motion in that, in that level of the spine" because "[i]t is locked." This objective medical fact, admitted by the defense's own witness, directly contradicts the jury's "No" finding on the "permanent consequential limitation" category.
Given the inherent inconsistency of the verdict (awarding lifetime future damages while denying permanency) and the overwhelming and unrefuted medical evidence of a permanent injury, particularly the spinal fusion and the defendants' own expert's concession, the jury's finding of no permanent or significant limitation cannot be supported by any fair interpretation of the evidence. Therefore, the plaintiff has established, as a matter of law, that she sustained a permanent consequential limitation of use of a body organ or member and a significant limitation of use of a body function or system within the meaning of Insurance Law §5102(d). Accordingly, the Court grants the plaintiff's motion for a directed verdict in favor of the plaintiff as to the permanent consequential limitation of use of a body organ or member and significant limitation of use of a body function or system categories of Insurance Law §5102(d).
Additur for Past and Future Pain and Suffering
The jury's awards of $150,000 for past pain and suffering and $150,000 for future pain and suffering deviate materially from what would be reasonable compensation when measured against relevant precedent of comparable cases. The plaintiff, Melodie Gomez, was 24 years old at the time of the accident and 32 years old at trial, with a life expectancy of 46 years. She sustained a severe disc herniation at L4-5 with an annular tear, edema, and 75% spinal canal compression, requiring a laminectomy with fusion surgery using screws and a rod. She also suffered disc herniations at L3-4 and C4-5. Her injuries caused significant and permanent [*6]restrictions of movement in her lumbar and cervical spines, ongoing pain, and weakness in her extremities. The injuries severely impacted her life, preventing her from completing her nursing degree, exercising, cooking, or engaging in customary daily activities. 
Comparable cases involving spinal fusion surgeries and similar injuries have resulted in significantly higher awards. In Petit v Archer, a plaintiff who underwent a cervical fusion and injections for neck and back injuries was awarded $600,000 for past pain and suffering and $1,200,000 for future pain and suffering. (Petit v Archer, 218 AD3d 695, 696-697 [2d Dept 2023]). In Register v SAS Morrison LLC, the plaintiff underwent spinal fusion surgery for herniated discs and was awarded $1,000,000 for past pain and suffering and $6,000,000 for future pain and suffering. The First Department reduced the amount for future pain and suffering to $2,000,000 but otherwise affirmed the trial court. (Register v SAS Morrison LLC, 189 AD3d 591, 592-593 [1st Dept 2020]) In Tarpley v NYCTA, a plaintiff who underwent an anterior cervical discectomy and fusion surgery and a subsequent spinal cord stimulator placement for lower back pain was found to be entitled to $1,000,000 for past pain and suffering and $2,000,000 for future pain and suffering. (Tarpley v New York City Transit Authority, 177 AD3d 929, 930 [2d Dept 2019]). In Williams v City of New York, a plaintiff who underwent a discectomy and fusion surgery at L4-5 was held entitled to $1,200,000 for past pain and suffering and $1,200,000 for future pain and suffering (see Williams v City of New York, 105 AD3d 667 [1st Dept 2013]). And in Mata v City of New York, a 27-year-old plaintiff who underwent a laminectomy with fusion surgery to her lower back and arthroscopic wrist surgery was found to be entitled to $1,000,000 for past pain and suffering and $2,000,000 for future pain and suffering (see Mata v City of New York, 124 AD3d 466 [1st Dept 2015]). 
Given the severity of Ms. Gomez's injuries, particularly the spinal fusion and its permanent nature, her young age, long life expectancy, and the profound impact on her life and career, the jury's awards of $150,000 for each category are demonstrably inadequate. When compared to the cited precedents, particularly those involving spinal fusions, a significantly higher amount is warranted to reasonably compensate her for her past and future pain and suffering. Therefore, the Court finds that the jury's awards for past and future pain and suffering deviate materially from what would be reasonable compensation. Based on the compelling comparable cases, the appropriate amounts for additur are as follows:
• For past pain and suffering, the award should be increased to $1,000,000.
• For future pain and suffering, the award should be increased to $2,000,000.
Conclusion
For the foregoing reasons, it is hereby:
ORDERED that the defendants' motion pursuant to CPLR §4404 to set aside the verdict or grant a new trial is denied in its entirety; and it is further
ORDERED that the plaintiff's motion pursuant to CPLR §4401 and §4404 is Granted; and it is further
ORDERED that the jury verdict finding no "permanent consequential limitation of use of a body organ or member" and "significant limitation of use of a body function or system" categories of Insurance Law §5102(d) is hereby set aside, and a directed verdict is entered in favor of the plaintiff, Melodie Gomez, as to these categories; and it is further
ORDERED that the plaintiff's motion for additur is granted to the extent of setting aside the verdict as insufficient and directing a new trial solely on the issue of damages, unless defendant, within thirty (30) days after service of a copy hereof, with notice of entry thereon, [*7]consent to the entry of a judgment increasing the amount awarded to plaintiff for past pain and suffering from $150,000 to $1,000,000 and future pain and suffering from $150,000 to $2,000,000.
This constitutes the Decision and Order of the Court.
DATE 9/16/2025
NICHOLAS W. MOYNE, J.S.C.